Chris **APOTAS** and Crystal Apotas, his wife, Plaintiffs Below,

v.

**ALLSTATE INSURANCE COMPANY, an Illinois corporation, Defendant Below.**

Supreme Court of Delaware.

Oct. 7, 1968.

Bruce M. Stargatt and Ben T. Castle, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiffs below.

Raymond L. Becker and James F. Kipp, of Becker & Kipp, Wilmington, for defendant below.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

We accepted Certification under Rule 20 of the following question of law as one of first instance in this State:

"DOES NOT UNINSURED MOTORISTS' COVERAGE EXTEND TO POLICYHOLDER INJURED BY TORTFEASOR WHOSE OWN LIABILITY COVERAGE LAPSES AS A RESULT OF HIS INSURANCE CARRIER'S INSOLVENCY SUBSEQUENT TO THE DATE OF THE ACCIDENT?"

On September 21, 1964, the plaintiffs were injured in a collision between their car and a car owned by Marva A. Roberts and driven by Theodore Street. Ultimately, suit was started against Roberts and Street. At the time, liability insurance on the Roberts car had been written by Chesapeake Insurance Company. The action brought by the plaintiffs was defended by counsel employed by Chesapeake.

On November 12, 1965, the plaintiffs obtained a verdict in the amount of $4,000, and on the same day Chesapeake went into receivership and has since paid nothing on the judgment entered on the verdict.

The plaintiffs at all times had in effect a policy of insurance written by Allstate Insurance Company which contained an uninsured motorist's endorsement. This endorsement was as follows:

"Allstate will pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such automobile."

"Uninsured automobile" is defined in the endorsement as:

" * * * an automobile:

"1. with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance applicable at the time of accident; or * * *."

Following the insolvency of Chesapeake, the plaintiffs made claim against Allstate under the uninsured motorist endorsement. Allstate denied liability and this suit followed.

The plaintiffs invoke the familiar rule that the language of insurance contracts is always construed against the insurance company which has drafted it. However, before the rule of construction may be applied to particular language of a policy, there must be ambiguity in the language, or confusion resulting from the

deliberate selection of language. Novellino v. Life Ins. Co. of N. A., Del., 216 A.2d 420. To construe unambiguous language to cover a situation plainly not covered is under the guise of construction to judicially rewrite the contract. This, the courts may not do.

We think this uninsured motorist endorsement is plain on its face, and is free from ambiguity. Clearly, by its terms, it covers only such injuries not covered by "bodily injury liability insurance applicable at the time of the accident." The meaning is clear, viz., there must be no liability coverage in effect at the time of the accident. If there is such insurance, it is plain Allstate has no liability.

The event of the subsequent insolvency of the issuing company does not alter the fact that there was outstanding at the time of the accident such insurance which precludes liability under the Allstate endorsement. This may seem a harsh result, but the fact remains that the endorsement plainly does not cover the actual event, i. e., the subsequent insolvency of Chesapeake.[1] The language of the endorsement being free from doubt, the plaintiffs are bound by its plain meaning. Novellino v. Life Ins. Co., supra.

The plaintiffs cite Continental Casualty Co. v. Ocean Accident & Guarantee Corp., Del.Super., 209 A.2d 743, for the proposition that the purpose behind the policy provision must be given sufficient weight to arrive at a result in accordance with the parties' intent. This may well be true when there is an ambiguity in the provision, but as we have pointed out, we find no ambiguity in the particular provision before us.

Also cited are several cases from other jurisdictions in support of the argument that an ambiguity was contained in the language of somewhat similar policy provisions. We are of the opinion that they are not in point in the case before us.

Carrignan v. Allstate Insurance Company, 108 N.H. 131, 229 A.2d 179, was a case in which the tortfeasor's liability had a less amount of coverage than that contained in the plaintiff's uninsured motorist endorsement, and a less amount than required by statute. The holding was that the tortfeasor's automobile was uninsured for the difference between the two coverages.

Pattani v. Keystone Insurance Company, 426 Pa. 332, 231 A.2d 402; State Farm Mutual Automobile Ins. Co. v. Brower, 204 Va. 887, 134 S.E.2d 277, and North River Ins. Co. v. Gibson, 244 S.C. 393, 137 S.E.2d 264, were all cases in which the policy provision described an uninsured vehicle as one to which there was no insurance applicable at the time of the accident, or as to which there was a policy at the time of accident under which the issuing company denies coverage. There is no similar provision in the endorsement before us.

Only one decision, it seems to us, supports the plaintiffs' position—that of In re Vanguard Ins. Co., 18 N.Y.2d 376, 275 N.Y.S. 2d 515, 222 N.E.2d 383. In that case, the New York Court of Appeals held, by a divided court, that "applicable at the time of the accident" requires construction in the light of the purpose sought to be accomplished by the provision. The majority then held that a policy held by the tortfeasor at the time of accident, but disclaimed much later, was not "applicable at the time of the accident."

We find the majority holding unpersuasive. We prefer the view of the three

---

1. We note that as of September 1, 1967, insurance carriers in Delaware are required to cover under uninsured motorist endorsements the subsequent insolvency of the tortfeasor's insurer. The plaintiffs argue that this was intended to eliminate an ambiguity, but we think it could be argued just as persuasively that it was intended to provide for the omission of the coverage.

dissenters who were of the opinion that the language of the provision was "too clear for construction."

For the foregoing reasons, the answer to the certified question is in the negative.