223 So.2d 630 (1969)
Mrs. Thelma W. HODGES
v.
CANAL INSURANCE COMPANY, Worth Insurance Company, Hartford Accident & Indemnity Company and Roosevelt Johnson.
No. 45305.
Supreme Court of Mississippi.
May 26, 1969.
Rehearing Denied July 3, 1969.
Mulhearn & Mulhearn, Natchez, for appellant.
Satterfield, Shell, Williams & Buford, K. Hayes Callicutt, Jackson, for Canal Ins. Co.
Laub, Adams, Forman & Truly, Natchez, for Hartford Accident and Indemnity Co.
*631 Brandon, Hornsby, Handy, O'Beirne & Benoist, Natchez, for Worth Ins. Co.
PER CURIAM:
Part I
Associate Justice ROBERTSON is the writer of Part I of this opinion; all justices except Presiding Justice GILLESPIE concur in the disposition of the case as to Canal Insurance Company and Worth Insurance Company.
The appellant, Mrs. Thelma W. Hodges, filed a bill of complaint in the Chancery Court of Adams County against: Roosevelt Johnson; Appellee Canal Insurance Company, who had issued an automobile liability insurance policy covering the automobile of Ezell Johnson; Appellee Worth Insurance Company, who had issued an automobile liability insurance policy covering Roosevelt Johnson, the driver of the automobile of Ezell Johnson; and Appellee Hartford Accident and Indemnity Company, who had written a policy of insurance containing an uninsured motorists clause on the automobile owned by Roy A. Hodges, the husband of the appellant, which automobile was being driven by the appellant at the time of the accident.
Appellant averred in her bill of complaint:
"[T]he two said insurance companies [Canal and Worth], through agents, immediately after said accident, began negotiations with the complainant toward settlement of the complainant's claim for a period of time long enough to permit the defendant Roosevelt Johnson to abscond from the jurisdiction of the State of Mississippi to places unknown. * * *" (Emphasis added).
Appellant further averred in her bill of complaint that a discovery of the liability insurance policies issued by Canal and Worth was indispensable to the end that full and exact justice may be had and that she was entitled to a discovery of the contents of, and the terms and conditions of, the automobile liability insurance policies issued by Canal and Worth.
Appellant also prayed for discovery of the facts upon which Canal and Worth rely in denying coverage under their policies. She averred in her bill of complaint:
"The two said defendant insurance companies, Worth Insurance Company and Canal Insurance Company have denied that the said defendant Roosevelt Johnson was entitled to coverage under the said policies of insurance hereinbefore mentioned, and complainant shows that the facts relative to the denial of said coverage are material to the complainant's claim as hereinafter set out and as hereinbefore set forth, and the facts upon which the two said defendant insurance companies rely upon in denying coverage under the two said insurance policies aforesaid are exclusively within the knowledge and possession of the two said defendant insurance companies, and the complainant shows that it is indispensable to the ends of full and exact justice that discovery be had of the facts upon which the two said defendant insurance companies deny coverage and that the complainant is entitled to a discovery of said facts." (Emphasis added).
She pleaded in the alternative that if the trial court should find that Canal and Worth had lawfully and properly denied coverage that she would be entitled to a decree against Hartford in the amount of $5,000 under the uninsured motorists clause of its contract of insurance.
Appellant attached as exhibits to her bill of complaint a copy of the declaration filed in the Circuit Court of Adams County against Ezell Johnson and Roosevelt Johnson, and a copy of a letter, dated October 4, 1963, to H.B. Wellborn and Company, adjusters for Canal and Worth, wherein she advised of her demands upon Roosevelt and Ezell Johnson and also that suit had been filed in the circuit court. In this letter *632 she set forth her injuries and also a compromise offer of settlement.
She filed also as an exhibit a photostatic copy of the complete family automobile policy issued by Hartford to her husband, Roy A. Hodges, and a copy of a letter dated July 28, 1965, from Hartford denying coverage under the uninsured motorists clause because their investigation revealed that the vehicle "being driven by Roosevelt Johnson was insured by Canal Insurance Company and that Roosevelt Johnson was insured by Worth Insurance Company."
Canal filed a general demurrer, a special demurrer, and a motion to strike and dismiss; Worth filed a general demurrer, special demurrer, and motion to strike and dismiss.
The general demurrer of Canal sets up seven specific grounds of demurrer, and the general demurrer of Worth sets up six specific grounds. Both of these general demurrers are fatally defective because they are speaking demurrers. Such demurrers have been specifically condemned by Griffith in his monumental work, Mississippi Chancery Practice:
"A demurrer is, and must be always, based solely upon the allegations of fact well pleaded as such in the bill. A demurrer cannot contain anything which denies any allegation in the bill. A party cannot qualify his demurrer nor give it any other operation than such as the law gives. The challenge of a demurrer can be interposed only for defects and insufficiencies apparent on the face of the bill itself; no question of fact other than as appears in the bill itself can be raised by demurrer. The substantial grounds of a demurrer must appear upon the face of the bill, and if a demurrer seeks to allege any fact or otherwise to import anything of fact into the question not shown on the face of the bill it is a `speaking demurrer,' and will be overruled. Not only so, but moreover, a demurrant cannot aid himself by what the evidence would show, or does show if there be any evidence in the case, nor by any answer filed, nor by any of the proceedings taken, by other defendants in the case although then a part of the cause. * * *" Griffith, Miss. Chancery Practice (2d ed. 1950) § 289, pp. 272-73. (Emphasis added).
Hartford filed a proper general demurrer.
On October 13, 1967, the chancery court signed a decree which recited:
"This cause coming on for hearing on Bill of Complaint, General Demurrer of Hartford Accident and Indemnity Company, separate General and Special Demurrers and Motions to Strike and Dismiss the Bill of Complaint, respectively, of Canal Insurance Company and of Worth Insurance Company, upon consideration of the policies of insurance of each of the defendants filed herein and in possession of the attorney for the complainant, and upon briefs and argument of counsel, and the Court finding that the complaint has an adequate remedy at law.

"It is now Ordered and Adjudged that the aforesaid Demurrers and Motions to Dismiss be and the same are hereby sustained, but the complainant is allowed thirty (30) days within which to amend her bill of complaint, on failure of which the bill of complaint is and shall stand dismissed." (Emphasis added).
The appellant declined to plead further, and her bill of complaint was dismissed.
All of the judges, except Gillespie, P.J., feel that the bill of complaint stated a cause of action against Canal and Worth for discovery as to the specific facts on which they base their denial of coverage, and also that the averments of collusion between Canal and Worth and Roosevelt Johnson to defeat the claim of appellant are sufficient to withstand demurrer.

*633 Part II
Presiding Justice GILLESPIE is the writer of Part II of this opinion with the concurrence of Chief Justice ETHRIDGE and Associate Justices RODGERS, BRADY, INZER and SMITH.
The second question is whether the bill of complaint stated a cause of action against Hartford under the uninsured motorists provisions of the policy. The Hartford policy under which appellant was an insured included protection against uninsured motorists and provided that Hartford would pay all sums that the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured caused by an accident and arising out of the ownership, maintenance and use of such uninsured automobile. An uninsured automobile is defined as "an automobile with respect to the ownership, maintenance, or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile."
The bill of complaint charges in the alternative that there has been a lawful denial of coverage by Canal and Worth because of the refusal of Roosevelt Johnson to cooperate in the defense of the suit. This raises for the first time in this jurisdiction the question stated in the first paragraph of this opinion as to whether the automobile being driven by Roosevelt Johnson was, under these circumstances, an uninsured automobile within the meaning of the uninsured motorists coverage of the Hartford policy.
This question has been considered by the courts of several of our sister states in recent years. In Vanguard Insurance Co. v. Polchlopek, 18 N.Y.2d 376, 275 N.Y.S.2d 515, 222 N.E.2d 383 (1966), the definition of an uninsured automobile was the same as in the present case, and the court stated that the phrase "applicable at the time of the accident" must be construed within the context of the clause wherein it is found and in the light of the purpose sought to be accomplished by the clause. In deciding that the definition of an uninsured automobile includes one where the insurance policy covering it at the time of the accident was later disclaimed because of failure to cooperate, the court stated that the policy's negative definitions of an uninsured motorist did not exclude an automobile upon which there had been a disclaimer of coverage. In Whitney v. American Fidelity Co., 350 Mass. 542, 215 N.E.2d 767 (1966) the plaintiff was insured under a liability policy with an uninsured automobile protection similar to the provisions of the Hartford policy. The insured thereunder sustained personal injuries in an accident while a guest in an automobile whose owner was the insured under an insurance policy issued under the compulsory motor vehicle liability law which excluded coverage as to guests. In holding that the automobile in which the plaintiff was riding at the time she was injured was an uninsured automobile, the court stated that there was no "applicable" insurance policy at the time of the accident capable of being applied to the bodily injury of the plaintiff.
There are cases to the contrary but we are persuaded that the New York and Massachusetts courts have properly construed the uninsured motorists provision.
In our opinion it would not be consistent with the purpose the uninsured motorist provisions of the policy purports to serve if it is narrowly construed so as to deny its protection if at the instant the accident happens there is a policy "applicable", although the coverage of the tort-feasor's policy is later lawfully disclaimed. As said in Whitney, supra, "applicable" can be said to mean "capable of being applied". A policy is applied, or is "applicable", at the time the policyholder is entitled to its protection.
*634 The purpose of the uninsured motorist provision is to provide the insured a means of collecting that to which he is legally entitled for bodily injuries caused by accident arising out of the ownership, maintenance and use of an uninsured automobile. This provision must be construed from the perspective of the injured insured, from whose standpoint a tort-feasor operating an automobile with no insurance available is an uninsured motorist. It is all the same to him whether there is no insurance at all, or a policy that is incapable of being applied to satisfy his claim because the tort-feasor's insurer lawfully disclaims liability.
The case of K.L.M. Distributing Co. v. Washington General Ins. Corp., 215 So.2d 710 (Miss. 1968) is in point. The insured, a truck brokerage company, was issued a policy on a load of frozen chickens to be shipped in interstate commerce by a non-leased carrier. A rider attached to the policy provided that "this policy is excess over any policy held by a non-owned or non-leased operator carrying a brokered load of merchandise for the assured." The brokered load was being carried by a non-owned non-leased operator (Miles Trucking Co.) who had a fire policy, but the "other insurance" insuring the Miles Trucking Co. was not available to K.L.M. and afforded no protection. Notwithstanding the wording of the policy the Court held that the "excess" clause in Washington General Insurance Company's policy necessarily implied that the "other insurance" that would limit Washington General's liability must be insurance affording K.L.M. protection from liability for the loss in question. The Court then said:
The "excess" clause in Washington General's policy should not be interpreted in a vacuum, but in the context of the whole policy and the purposes for which it was issued and the premium paid thereon. The policy issued by The Home Insurance Company to Miles Trucking Service did not insure K.L.M. either as a named or unnamed insured, and it was not relevant to the "excess" clause relied upon by Washington General. Absent appropriate words indicating a contrary intention, the "excess" clause in Washington General's policy should not be given a construction that results in K.L.M. having no coverage against liability for the loss involved. To do so would defeat the purpose the policy purposed to serve. (215 So.2d at 713).
We are therefore of the opinion that appellant's bill of complaint was sufficient to withstand Hartford's demurrer. No issue is raised on the question of appellant's right to bring a direct action against her own insurer under the uninsured motorist clause. It seems obvious that appellant may bring a direct action against Hartford, her own insurer.
The decree of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.
Reversed and remanded.
ROBERTSON, Justice (dissenting as to Part II):
I am unable to agree with the majority of the Court that if the trial court finds that Canal and Worth have legally and properly denied coverage and liability under their policies, that Hartford becomes liable under the uninsured motorists clause of its contract of insurance.
Mr. Hodges pays an annual premium of $7 for uninsured motorists coverage of $5,000 for each person and $10,000 for each accident. For this small premium, Hartford in clear and unambiguous language solemnly contracted to furnish very narrow and limited coverage.
The contract of insurance, under the heading, "SECTION III  PROTECTION AGAINST UNINSURED MOTORISTS", defines "uninsured automobile":
"(a) an automobile with respect to the ownership, maintenance or use of *635 which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, * * *" (Emphasis added).
In Apotas v. Allstate Insurance Company, 246 A.2d 923 (Del., Oct. 1968), the insured recovered a judgment against the other party's insurer but was not able to collect on this judgment because on the very day that the plaintiffs obtained the judgment the other party's insurer, Chesapeake Insurance Company, went into receivership.
The following question was certified to the Supreme Court of Delaware for answer:
"Does not uninsured motorists' coverage extend to policyholder injured by tort-feasor whose own liability coverage lapses as a result of his insurance carrier's insolvency subsequent to the date of the accident?" 246 A.2d at 924.
"Uninsured automobile" was defined in Apotas:
"an automobile:
"1. with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance applicable at the time of accident; * * *" 246 A.2d at 924.
It will be noted that this is the same definition as in the Hartford policy.
The Supreme Court of Delaware, in deciding this question, said:
"The plaintiffs invoke the familiar rule that the language of insurance contracts is always construed against the insurance company which has drafted it. However, before the rule of construction may be applied to particular language of a policy, there must be ambiguity in the language, or confusion resulting from the deliberate selection of language. Novellino v. Life Ins. Co. of N.A., Del., 216 A.2d 420. To construe unambiguous language to cover a situation plainly not covered is under the guise of construction to judicially rewrite the contract. This, the courts may not do.

"We think this uninsured motorist endorsement is plain on its face, and is free from ambiguity. Clearly, by its terms, it covers only such injuries not covered by `bodily injury liability insurance applicable at the time of the accident.' The meaning is clear, viz., there must be no liability coverage in effect at the time of the accident. If there is such insurance, it is plain Allstate has no liability.

"The event of the subsequent insolvency of the issuing company does not alter the fact that there was outstanding at the time of the accident such insurance which precludes liability under the Allstate endorsement. This may seem a harsh result, but the fact remains that the endorsement plainly does not cover the actual event, i.e., the subsequent insolvency of Chesapeake. The language of the endorsement being free from doubt, the plaintiffs are bound by its plain meaning. Novellino v. Life Ins. Co., supra.
"The plaintiffs cite Continental Casualty Co. v. Ocean Accident & Guarantee Corp., Del.Super., 209 A.2d 743, for the proposition that the purpose behind the policy provision must be given sufficient weight to arrive at a result in accordance with the parties' intent. This may well be true when there is an ambiguity in the provision, but as we have pointed out, we find no ambiguity in the particular provision before us.
* * * * * *
"Only one decision, it seems to us, supports the plaintiffs' position  that of In re Vanguard Ins. Co., 18 N.Y.2d 376, 275 N.Y.S.2d 515, 222 N.E.2d 383. In that case the New York Court of Appeals held, by a divided court, that `applicable at the time of the accident' requires *636 construction in the light of the purpose sought to be accomplished by the provision. The majority then held that a policy held by the tortfeasor at the time of accident, but disclaimed much later, was not `applicable at the time of the accident.'
"We find the majority holding unpersuasive. We prefer the view of the three dissenters who were of the opinion that the language of the provision was `too clear for construction.'" 246 A.2d at 924-926. (Emphasis added).
To the same effect is the Missouri case of Swaringin v. Allstate Insurance Company, 399 S.W.2d 131 (Mo. App. 1966); the North Carolina cases of Rice v. Aetna Casualty and Surety Company, 267 N.C. 421, 148 S.E.2d 223 (1966), and Hardin v. American Mutual Fire Insurance Company, 261 N.C. 67, 134 S.E.2d 142 (1964); and the Michigan case of Rousso v. Michigan Educational Emp. Mutual Insurance Company, 6 Mich. App. 444, 149 N.W.2d 204 (1967).
Apparently the Mississippi Legislature felt that the plain, clear, and unambiguous language "insurance policy applicable at the time of the accident" did not cover a situation such as is presented in this case, because if it did they would not have felt it necessary to enact a law specifically defining "uninsured motor vehicle" as:
"(2) there is such insurance in existence but the insurance company writing the same has legally denied coverage thereunder, or is unable, because of being insolvent at the time of, or becoming insolvent during the twelve (12) months following, the accident, to make payment with respect to the legal liability of its insured within the limits specified in said Section 1 [§ 8285-51], * * *" § 8285-52 Miss.Code 1942 Ann. (Supp. 1968).
The Legislature did provide in this 1966 law that this definition would not take effect until January 1, 1967. The Legislature fully realized it could not pass an ex post facto law, a law applicable to solemn contracts already made, which for a very small premium afforded limited coverage.
I fail to see the applicability of Whitney v. American Fidelity Company, 350 Mass. 542, 215 N.E.2d 767 (1966). The plaintiff in that case was a guest in the car of one Philip Clegg, whose only insurance was a compulsory motor vehicle liability policy required by Massachusetts law. The Supreme Judicial Court of Massachusetts stated the question before it in this language:
"The issue before us is whether, since Clegg carried a compulsory policy on his automobile but made no provision against injuries to guests by means of either a bond or by insurance, it can be held that there was no `bodily injury liability bond or insurance policy applicable at the time of the accident.'" 350 Mass. at 543, 215 N.E.2d at 768.
The court answered this question by saying that at the time of the accident Clegg's automobile was uninsured in that there was no bond for insurance with respect to him "capable of being applied" to the bodily injuries of this plaintiff who was a guest in his automobile. Therefore, the plaintiff could recover under the uninsured motorists clause of her father's insurance policy.
The Supreme Court of Mississippi said in Gaston v. Mitchell, 192 Miss. 452, 4 So.2d 892 (1941):
"We may not follow counsel into fields of speculation as to what the grantor intended or should have intended, for we are compelled to identify his intent with his plain language. * * * Ambiguity may not be created in order to make available rules of construction. Nor may courts seek out an intent in order to judge what was said, but rather must they judge what was meant by what was said. * * *" 192 Miss. at 458-459, 4 So.2d at 893. (Emphasis added).
*637 JONES and PATTERSON, JJ., join in this dissent.
GILLESPIE, Presiding Justice (dissenting):
I disagree with that part of the opinion holding that the bill of complaint stated a cause of action against Canal Insurance Company and Worth Insurance Company. In my opinion there is no authority in law for holding that the trial court erred in sustaining the demurrers as to Canal and Worth.
It is first stated that the bill of complaint stated a cause of action for discovery as to the specific facts relied upon by Canal and Worth on which they base denial of coverage. What are the charges to sustain this part of Mrs. Hodges' case against Canal and Worth? She first avers that Roosevelt Johnson, the tort-feasor, has absconded to places unknown. Mrs. Hodges knows this fact. She then avers that the facts relative to the denial of coverage by Canal and Worth are exclusively within the knowledge and possession of the two insurance companies. She does not say that there are any facts in addition to the fact that Roosevelt Johnson absconded. She does not aver that Canal and Worth have refused to divulge this information or that she has requested them to furnish her this information. Before one is entitled to discovery he must show that he has made reasonable efforts to obtain the information, and ought to show that he has applied to the defendant and the defendant has refused to furnish it. Griffith, Mississippi Chancery Practice, § 430 (1950). Clearly, the averments of the bill of complaint are insufficient to meet the standard stated in Griffith, Section 429 which is, in part as follows:
Although it may be true that the facts and the proof thereof may be within the exclusive possession and keeping of the defendant and although for that reason it may be difficult to state them in such a way as to disclose a meritorious cause of action, nevertheless, since discovery is merely a means to the end of making the necessary proof of a case for relief, the complainant must show himself entitled to relief against the party made defendant without which showing the bill would be only a fishing bill, and therefore not maintainable. In the very nature of orderly judicial procedure, a discovery could not be permitted merely to search for grounds upon which to base a suit. And moreover the case must be stated in such a manner that the court may see that the matters of which discovery is sought are really material to the case.
Secondly, the majority hold that Mrs. Hodges' bill of complaint is sufficient to withstand a demurrer because it avers that Canal and Worth negotiated for a settlement for a period long enough to permit Roosevelt Johnson to abscond from the State of Mississippi. It is not charged that Worth or Canal had any part in Johnson leaving the state. All the two insurance companies are charged with is negotiating for a settlement. How, then, can it be said that there was a charge of collusion. If there was collusion (the opinion used that word, but not the complainant) it is a charge of fraud. In Griffith, supra, Section 176 it is said:
No principle of equity jurisprudence is more firmly established than that, where fraud is relied on as a basis of relief sought from a chancery court, the facts upon which the charge of fraud is predicated must be specifically stated with full definiteness of detail. No general averment of a fraudulent course of business, and no bare statement of a corrupt design on the part of the defendant is sufficient.
Mrs. Hodges does not even make a bare statement of fraud, much less meet the test above stated.
The bill of complaint in this case is nothing but a fishing bill as far as Canal and *638 Worth are concerned. Griffith, supra, Section 173.
The rule that the allegations of the pleading are taken strongest against the pleader applies to bills when tested by demurrer. Griffith, supra, Section 307.
The demurrer is not invalid because it contains affirmative matter, it is only invalid as to the speaking part.
The maintenance of this action on the vague averments of the bill of complaint is a patent violation of the terms of the policies of Canal and Worth, both of which contain the following:
No action shall lie against the company unless as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.
Maintenance of this cause of action as to Canal and Worth is contrary to the decisions of this Court holding that direct action against a liability insurer cannot be maintained until there is a judgment against the insured, Cook v. State Farm Mutual Ins. Co., 241 Miss. 371, 128 So.2d 363 (1961); McArthur v. Maryland Casualty Co., 184 Miss. 663, 186 So. 305, 120 A.L.R. 846 (1939).
In short, Canal and Worth are charged with negotiating for a settlement for a sufficient length of time to permit the tort-feasor to leave the state. The majority holds this sufficient to state a cause of action for collusion. The bill of complaint simply does not charge any facts that these two insurance companies were guilty of collusion, fraud or any other wrongdoing. Since this element of the case is totally lacking, Mrs. Hodges is not entitled to the discovery, even if the bill of complaint were sufficient as a bill for discovery, which it is not for the reasons already stated. The Worth and Canal policies are in the record. It is acknowledged by appellant that she needs no discovery as to these policies from which appellant quotes in her brief.