459 So.2d 787 (1984)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
v.
James Nester and Mary Nester.
No. 54437.
Supreme Court of Mississippi.
October 31, 1984.
Rehearing Denied December 12, 1984.
James N. Compton, Carter O. Bise, Bryan, Nelson, Allen, Schroeder & Compton, Biloxi, for appellant.
*788 Ben F. Galloway, Owen, Galloway & Dickinson, Gulfport, for appellees.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Harrison County wherein the cause was heard by the circuit judge, sitting without a jury on facts stipulated to by the parties. The circuit court held that appellee, Mary Nester, was entitled to coverage under the uninsured motorists coverage of an insurance policy on her car paid for by her father, appellee James Nester. The court entered a judgment against State Farm Mutual Automobile Insurance Co. (State Farm) in the amount of $40,000. From the circuit judge's ruling, State Farm brings this appeal and assigns as error:
The Trial Court erred as a matter of law in holding that Mary Nester was entitled to uninsured motorist benefits from the appellant State Farm Mutual Automobile Insurance Company, because her injuries were neither caused by an uninsured motorist, nor an uninsured motor vehicle, nor another and separate motor vehicle owned or operated by one without liability insurance.
STIPULATION OF FACTS
1. The Plaintiffs, James Nester and Mary Nester, are adult resident citizens of Harrison County, Mississippi, First Judicial District.
2. Mary Nester is the daughter of James Nester and resides with her father and mother, Jessie Nester, at Route 1, Box 591, Commission Road, Long Beach, Mississippi.
3. The Defendant, State Farm Mutual Automobile Insurance Company, hereinafter referred to as State Farm, is an Illinois corporation qualified to do business in the State of Mississippi.
4. The Defendant, Henry Council, Jr., is an adult resident citizen of Harrison County, Mississippi, First Judicial District.
5. Henry Council is an issuing agent of State Farm and maintains his sales office at 206 Jeff Davis Avenue, Long Beach, Mississippi.
6. On August 22, 1981, one Patrick Sullivan met Mary Nester after she got off work. They went to D.J.'s, a stereo lounge in Biloxi, in Mary Nester's car. They left, with Sullivan driving and Nester a passenger, and were en route elsewhere when an accident occurred at about 1:58 a.m. on August 23. The accident was proximately contributed to by the negligence of Patrick Sullivan and involved a collision with a City of Biloxi police car. Mary Nester was injured in the accident, her injuries including: ruptured spleen, fracture of the pelvis, fracture of the right clavicle, cerebral concussion and fracture of the right maxillary lateral incisor.
7. Mary Nester was the record owner of the 1974 Mustang, and James Nester, the named insured on the State Farm policy covering the 1974 Mustang. Patrick Sullivan had no independent liability insurance coverage. James Nester and Jessie Nester had forbidden Mary Nester to allow anyone else to drive the car, and in particular, Patrick Sullivan. Patrick Sullivan had driven Mary's car before and was driving with her permission the night of the accident. Mary was the primary driver as well as the owner of the Mustang.
8. The State Farm policy covering the 1974 Mustang forbids Mary Nester of the named insured, James Nester, from making a claim under the liability coverage of the policy. Specifically, no liability claim can be made against what the policy defines as a permissive operator.
9. At the time of the accident, James Nester was the "named insured" on four separate State Farm automobile policies issued through Henry Council, covering the following vehicles

 1) Policy 145-6836-F09-24 1974 Mustang
 2) Policy XXX-XXXX-XXX-XX 1971 Firebird
 3) Policy 97-7108-A04-24G 1979 Firebird
 4) Policy 97-7109-A04-24D 1967 Chevrolet

*789 10. The State Farm policies shall hereinafter be referred to as policies "One", "Two", "Three", and "Four". Each policy covered by the terms of State Farm policy form 9824.1, a copy of which is attached hereto as Exhibit A.
11. Each policy had uninsured motorist coverage for personal injury in the amount of $10,000.00 per policy or a total of $40,000.00 coverage available if all four policies were determined by the Court to be applicable.
12. Policy "One" covering the 1974 Mustang, owned by Mary Nester, was rated by State Farm for use by a female driver, although James Nester appears to be the "named insured" on policy "One".
13. As a result of the injuries Mary Nester sustained in the accident of August 23, 1981, she incurred $7,238.00 in medical expenses.
14. State Farm has issued Mary Nester a $5,000.00 draft under the "medpay" provision of policy "One" but has not paid any of the uninsured motorist benefits under any of the four State Farm policies in effect at the time of the accident.
15. Mary Nester's injuries exceed $40,000.00 if the Court finds uninsured motorist coverage available under all four policies and said injuries exceed $30,000.00 if the Court finds coverage only under policies "Two", "Three", and "Four".
16. In the event the Court finds uninsured motorist coverage under all four policies or under policies "Two", "Three", and "Four" only, the parties agree to arbitrate the property damage claim concerning the 1974 Mustang, and this action is strictly limited to the personal injury claim of Mary Nester.

DISCUSSION OF LEGAL ISSUES
Simplified, the question may be pared down to the following: Whether an insured who is injured while riding as passenger in her own car is entitled to recover from her uninsured motorist coverage where her policy expressly forbids her to make a claim based on liability and the driver of the car is otherwise uninsured?
The parties first approach this question by addressing whether Patrick Sullivan, the driver of the car was a permissive user so as to be insured under the policy purchased by Mary Nester's father, James Nester. The determination of this question does not go far in answering the ultimate one. This is because if Sullivan was a permissive user and therefore insured under the policy, as State Farm argues, Mary Nester is still forbidden to make a liability claim against him as a permissive user. If Sullivan was not a permissive user and therefore uninsured, as the Nesters argue, there is also no liability insurance applicable to the accident. Therefore, regardless of whether Sullivan was a permissive user there is still no liability insurance applicable to Mary Nester. If there is any insurance applicable, it must be the uninsured motorist coverage.
Under § 83-11-101 Miss. Code Ann. (Supp. 1983) uninsured motorist coverage is required to be offered with all bodily injury liability policies. Because the legislature has directed that our state's motorists be so protected, every automobile liability insurance policy issued after January 1, 1980, has also de jure provided uninsured motorist coverage of at least the statutory minimum, unless the insured expressly rejected that coverage. Any attempt to contractually limit an insurer's duty of coverage is necessarily confined to the boundaries of the statute and may not be effective to narrow the requirements of that statute.
The Code defines an uninsured motor vehicle as:
(c) The term "uninsured motor vehicle" shall mean:
(i) A motor vehicle as to which there is no bodily injury liability insurance; or
(ii) A motor vehicle as to which there is such insurance in existence, but the insurance company writing the same has legally denied coverage thereunder or is unable, because of being insolvent at the *790 time of or becoming insolvent during the twelve (12) months following the accident, to make payment with respect to the legal liability of its insured; or
(iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage; or
(iv) A motor vehicle as to which there is no bond or deposit of cash or securities in lieu of such bodily injury and property damage liability insurance or other compliance with the state financial responsibility law, or where there is such bond or deposit of cash or securities, but such bond or deposit is less than the legal liability of the injuring party; or
(v) A motor vehicle of which the owner or operator is unknown; provided that in order for the insured to recover under the endorsement where the owner or operator of any motor vehicle which causes bodily injury to the insured is unknown, actual physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured. (Emphasis supplied).
§ 83-11-103(c) Miss. Code Ann. (Supp. 1983)
Numerous decisions of this court have held that the uninsured motorist statute is to be liberally construed so as to provide coverage, and exceptions from coverage are to be strictly construed. Stevens v. United States Fidelity and Guaranty Co., 345 So.2d 1401 (Miss. 1977); Parker v. Cottonbelt Insurance Co., Inc. 314 So.2d 342 (Miss. 1975); Lowery v. State Farm Mutual Automobile Insurance Co., 285 So.2d 767 (Miss. 1973); Hodges v. Canal Insurance Co., 223 So.2d 630 (Miss. 1969).
In Hodges, supra, this Court held that Hodges' uninsured motorist coverage was applicable where the insurance company of the person with whom she collided refused to pay on the grounds of that person's failure to cooperate. Speaking for the Court, Justice Gillespie wrote that in determining whether uninsured motorist coverage is available, one must view the matter from the perspective of the injured insured.
In our opinion it would not be consistent with the purpose the uninsured motorist provisions of the policy purports to serve if it is narrowly construed so as to deny its protection if at the instant the accident happens there is a policy "applicable", although the coverage of the tort-feasor's policy is later lawfully disclaimed. As said in Whitney [v. American Fidelity Co., 350 Mass. 542, 215 N.E.2d 767 (1966)], supra, "applicable" can be said to mean "capable of being applied". A policy is applied, or is "applicable," at the time the policyholder is entitled to its protection.
The purpose of the uninsured motorist provision is to provide the insured a means of collecting that to which he is legally entitled for bodily injuries caused by accident arising out of the ownership, maintenance and use of an uninsured automobile. This provision must be construed from the perspective of the injured insured, from whose standpoint a tort-feasor operating an automobile with no insurance available is an uninsured motorist. It is all the same to him whether there is no insurance at all, or a policy that is incapable of being applied to satisfy his claim because the tort-feasor's insurer lawfully disclaims liability. (Emphasis Added).
223 So.2d at 633, 634.
In Harthcock v. State Farm Mutual Automobile Insurance Co., 248 So.2d 456 (Miss. 1971), this Court reaffirmed the principle that the decision as to whether uninsured motorist coverage is available is a matter to be decided from the perspective of the injured insured. In that case, Harthcock was injured while a passenger on a motorcycle being driven by Horne. The accident was caused by Horne's negligence and Harthcock brought suit against Horne. Horne's insurance company denied coverage citing a provision in Horne's insurance policy which excluded bodily injury coverage to any person while "on or getting on *791 or alighting from the insured vehicle." Because there was no bodily injury, liability insurance on the motorcycle available to Harthcock, this court held that she was entitled to recovery from her own uninsured motorist coverage. We also held that a provision in Harthcock's uninsured motorist coverage which forbade her from making any settlement was invalid as against public policy where applied to a tort-feasor other than the uninsured motorist. The Court held:
The insurer may not cut down on the coverage the statute requires. The statute intends to provide a source for the collection by the insured of all sums which she shall be legally entitled to recover as damages against the owner or the operator of an uninsured motor vehicle. The coverage afforded by these policies is mandatory under the statute and may not be cut down by a policy exclusion.
248 So.2d at 459.
This Court again held an exclusion of uninsured motorist coverage to be void as against public policy in Lowery v. State Farm Mutual Automobile Insurance Co., supra. In that case the policy contained a provision which read:
This insurance does not apply ... to bodily injuries to an insured while occupying or through being struck by a land motor vehicle owned by a named insured or any resident of the same household, if such vehicle is not an owned motor vehicle, ...
"Owned motor vehicle" was defined by the policy as those motor vehicles described in the policy, temporary substitute automobiles newly acquired automobiles, and certain other automobiles described in the policy.
Lowery was injured while riding a Honda motorbike not mentioned in the insurance policy. The Court held that Lowery was "clearly within the terms of the exclusionary provision of the policy." The person with whom Lowery collided was uninsured. The Court again stated the rule that the uninsured motorist statute is to be liberally construed so as to accomplish the purpose of the legislature in attempting to protect the public from the negligence of financially irresponsible drivers. After an extensive discussion of the law in a number of other jurisdictions, this Court held that the exclusionary clause in Lowery's insurance contract violated the public policy of the state as manifested by the Mississippi Uninsured Motorist Act.
In Preferred Risk Mutual Insurance Company v. Poole, 411 F. Supp. 429 (N.D. Miss. 1976), Judge Keady followed the dictates of this Court as set forth in Hodges and Harthcock. In Poole, three persons were killed when one of them driving the truck they were riding in lost control of the vehicle as it careened off the road. The three dead travelers were employees of the owner of the truck. One of them was driving and the other two were the only passengers. A cross-employee exclusion, similar to the family exclusion in the instant case, excluded liability coverage to Poole's employees where their injury, sickness, disease or death was the result of another employee's actions arising out of the maintenance or use of the employer's automobile. The Court acknowledged that if considered alone, the cross-employee exclusion would be directly applicable and relieve Preferred Risk of any duty of coverage. Regardless, the Court carefully analyzed the Mississippi Vehicle Safety Responsibility Act and the Uninsured Motorist Vehicle Act, along with decisions of this Court (particularly Hodges and Harthcock) and arrived at the conclusion that the exclusion of coverage made the uninsured motorist provision of the employer's policy applicable. The Court held:
Though the facts are dissimilar, Harthcock is legally indistinguishable from the instant case. As we have demonstrated, no liability insurance coverage under Preferred Risk's policy is available to the Gattis or Morris death beneficiaries. Viewing the statute from the perspective of the injured insured, as Hodges and Harthcock command us to do, it is beyond cavil that the death vehicle was *792 an "uninsured motor vehicle" under § 83-11-103 and that Preferred Risk has a duty of coverage.
We therefore hold that Preferred Risk's attempt to exclude Morris and Gattis, as occupants of Poole's pickup truck, from insurance protection under the uninsured motorist endorsement contained in Poole's policy clearly conflicts with the Mississippi Uninsured Motorist Vehicle Act and is ineffectual to deny uninsured motorist coverage to anyone statutorily qualified to invoke such coverage. The terms of the statute and the interpretation given it by the state's highest court, as well as the declared purposes of the automobile insurance industry in providing uninsured motorist coverage, leave no room for Preferred Risk to avoid its uninsured motorist obligation fixed by law.
We declare that Preferred Risk, although freed of any payment responsibility to the Morris and Gattis death beneficiaries as liability insurer to Poole, is nonetheless obligated, within the applicable statutory limits, to pay the death claimants for any losses which may be due to the deaths of Morris and Gattis incurred as the proximate result of Lovelace's negligent operation of Poole's pickup truck.
411 F. Supp. at 439.
The only reported decision in which this Court has failed to follow the rule announced in Hodges, Harthcock, Lowery and Poole, is Aitken v. State Farm Mutual Automobile Insurance Company, 404 So.2d 1040 (Miss. 1981). In that case Aitken was driving his fiancee's car and she was riding as a passenger. Due to Aitken's negligence, he lost control of the car and caused it to run into a telephone pole. His fiancee, Robin Black, was insured. Ms. Black then married Aitken and sued State Farm to recover damages under both the liability and uninsured motorist provision of the policy. The bulk of the Court's opinion was directed toward the doctrine of interspousal immunity; however, the Court also held that Black's uninsured motorist coverage was not applicable.
The Aitken decision failed to cite any of this Court's previous opinions which have held that the statute is to be liberally construed. There is no mention in the opinion of Hodges, Harthcock, Parker or Stevens. Indeed, the opinion gave the uninsured motorist statute a very narrow construction by holding that it covered only injuries caused by "another and separate motor vehicle owned or operated by a person who did not have liability insurance on his automobile or had such coverage in an insurance company that became insolvent or bankrupt." 404 So.2d at 1043.
The Aitken decision is an anamoly in this state's jurisprudence. It rejected a rule of law which has been steadily followed since 1969. Not only did it reject that rule of law but it failed to cite the cases in which that rule is announced and, moreover, it failed to cite authority for the rule it purported to announce. Indeed, the trial court in the instant case held that the Aitken decision was inapplicable because it was primarily founded in the doctrine of interspousal immunity and because "to give the Aitken case the meaning urged by the defendant would overrule a number of long standing precedent without a positive, plain and explicit directive from the Supreme Court and would be in violation of our statutes on uninsured motorist coverage."
Commentators on the subject have universally recognized that the humanitarian purpose of the uninsured motorist statute is best served when the applicability of the coverage is viewed from the standpoint of the injured insured:
It must always be noted that uninsured motorists coverage is designed for the benefit of insureds and not insurors.
Couch on Insurance, 2nd Ed. § 45:624, p. 35, 36.
Under certain policy provisions and in certain factual situations, the vehicle is uninsured despite the existence of liability insurance where the driver is excluded from coverage under the policy.
Couch at § 45:640, p. 160.
In referring to exclusion clauses which prohibit family members from recovering *793 under liability coverage and which prevent recovery under the uninsured motorist provision, noted insurance commentator Appleman has written: "It almost resembles Amos and Andy's definition of an insurance policy as a paper where "the big print gives it to you, and the little print takes it away." Insurance Law and Practice by Appleman, § 5080.35. Appleman has also written as follows:
It has properly been stated that uninsured motorist protection is not coverage for vehicles but for persons, even though it is contained within a policy otherwise insuring an automobile and that it would be unconscionable to permit an insurer to collect premiums on the one hand and remove protection with the other by redefining "insured" under the UM coverages. If an automobile cannot be insured for the purpose of liability coverages and uninsured for UM coverage, the insurer cannot exclude from the UM coverage a class of persons required to be included under the liability section.
Appleman at § 5080.
The briefs in this cause have been of great assistance to this Court. We have carefully studied State Farm's legal argument and the decisions from other jurisdictions which support it; however, we do not find those arguments persuasive. The numerous decisions of this Court which require that we view the situation from the perspective of Mary Nester, permit no conclusion other than that Patrick Sullivan was an uninsured motorist and that as such it would be against public policy of our state, as expressed by the legislature, to allow State Farm to exclude Mary Nester from coverage. As the trial court observed, the Aitken decision did not overrule any prior decisions of the Court. It stands alone in the face of those other decisions and is not supported by authority nor binding to the case sub judice. Any language in that opinion contrary to today's decision is mere dictum and is hereby expressly disfavored.
Finally there is a point raised by the appellees as to the "stacking" of insurance policies. James Nester had four policies on which he paid premiums. Each of these policies extended uninsured motorist coverage to Mary Nester. The trial court held that each of these policies was applicable and enforceable. State Farm conceded as much during oral argument of this cause.
In Government Employees Insurance Company v. Brown, 446 So.2d 1002 (Miss. 1984), this Court once again reaffirmed the rule that where an insured purchases more than one policy and pays the premiums on more than one policy, that insured is entitled to collect on all such policies. Stacking is therefore permissible in Mississippi and the circuit court committed no error in aggregating the four insurance policies. See also Southern Farm Bureau Casualty Ins. Co. v. Roberts, 323 So.2d 536 (Miss. 1975).
Based on all of the foregoing, we hereby affirm the decision of the circuit court.
AFFIRMED.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and BOWLING, HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
WALKER, P.J., not participating.