# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HANDLER CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N21C-04-016 VLM |
| | ) | |
| WEST AMERICAN INSURANCE | ) | |
| COMPANY d/b/a/ LIBERTY | ) | |
| MUTUAL INSURANCE | ) | |
| COMPANY and/or LIBERTY | ) | |
| MUTUAL GROUP, and S.T. GOOD | ) | |
| INSURANCE, INC., d/b/a/ S.T. | ) | |
| GOOD INSURANCE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Submitted: November 17, 2021
Decided: January 21, 2022

*Upon Consideration of Defendant West American Insurance Company's Motion for Judgment on the Pleadings,* **DENIED.**

*Upon Consideration of Plaintiff Handler Corporation's Cross Motion for Judgment on the Pleadings,* **DENIED.**

Louis J. Rizzo, Jr., Esquire of Reger, Rizzo & Darnall, Wilmington, Delaware. *Attorney for Plaintiff.*

David G. Culley, Esquire of Tybout, Redfearn & Pell, Wilmington, Delaware. *Attorney for Defendant West American Insurance Company.*

Marc Sposato, Esquire of Marks, O'Neill, O'Brien, Doherty & Kelly, Wilmington, Delaware. *Attorney for Defendant S.T. Good Insurance, Inc.*

**MEDINILLA, J.**

**AND NOW TO WIT**, this 21st day of January 2022, upon consideration of Defendant West American Insurance d/b/a Liberty Mutual Insurance Co. and/or Liberty Mutual Group's ("Liberty Mutual") Motion for Judgment on the Pleadings, Plaintiff's Response in Opposition, Plaintiff's Cross Motion for Judgment on the Pleadings, oral arguments, and the record in this case, **IT IS HEREBY ORDERED** that Defendant's Motion is **DENIED** and Plaintiff's Cross Motion is **DENIED** for the following reasons:

1.     This case involves allegations for breach of contract made by Plaintiff Handler Corporation ("Plaintiff") against both Defendants Liberty Mutual and ST Good Insurance ("Good")[1] for property damage claims sustained on August 4, 2020.

2.     Plaintiff is a residential home builder in the state of Delaware.[2]  It sought brokerage services through Good, which ultimately procured an insurance policy with Liberty Mutual to provide coverage for a construction project throughout Delaware.[3]  The building project contemplated the construction of approximately eighty (80) units/houses annually.[4]

3.     On December 28, 2017, Good submitted an insurance application on behalf of Plaintiff to Liberty Mutual.[5]  Following receipt of the application and

---

[1] *See* Amended Complaint, D.I. 14 [hereinafter Amended Complaint].
[2] *Id.* ¶ 1.
[3] *Id.* ¶ 5.
[4] Appendix to Defendant's Opening Brief, at A-203.
[5] *See id.* at A-199-202.

subsequent correspondence, Liberty Mutual issued a Commercial Inland Marine Insurance Policy with Builders' Risk Coverage (the "Policy") effective January 1, 2018.[6] The record presented here reflects a 671-page Policy. A specific provision of the Policy listed coverage for windstorm loss or damage.[7] Separate coverage is included in the Policy for catastrophic losses. It is undisputed that a tornado is not specifically listed as a catastrophe in the Policy.

4. On August 4, 2020, a tornado (windstorm) struck and caused total loss or damage to several houses under construction.[8] Plaintiff filed a claim for losses in the amount of $605,793.08.[9] Liberty Mutual asserted a Catastrophic Limit as a basis to deny the claim and paid what it considered to be the limit of $250,000 under the Policy.[10]

5. Following a request from Good, Liberty Mutual agreed to increase the Catastrophic Limit and issued a Policy Change Endorsement on September 16, 2020.[11] Liberty Mutual did not increase the premiums and the Policy Change Endorsement increased the Policy's catastrophe limit to $1,000,000.[12]

---

[6] *See id.* at A-206-258; *see also id.* at A-259-818 for subsequent endorsements to the Policy.
[7] *See id.* at A-257.
[8] Amended Complaint, ¶ 18; Answer of Defendant Liberty Mutual to Amended Complaint, D.I. 15, ¶ 18 [hereinafter Defendant's Answer to Amended Complaint].
[9] *See* Amended Complaint, ¶ 19.
[10] Amended Complaint, ¶ 20.
[11] *See* Appendix to Defendant's Opening Brief, at A-521.
[12] *See id.*

6.      On April 5, 2021, Plaintiff filed its Complaint against both Liberty Mutual and Good, alleging breach of contract *inter alia*.  On July 6, 2021, Plaintiff filed an Amended Complaint seeking retroactive coverage of the Policy Change Endorsement for coverage of up to $1,000,000.  On July 20, 2021, Good filed its Answer to the Amended Complaint and further alleged crossclaims of negligence, breach of contract, and estoppel against Liberty Mutual.  On July 9 and August 5, respectively, Liberty Mutual filed two Motions for Judgment on the Pleadings against Plaintiff and Good.  In Plaintiff's Response to the Motion, Plaintiff further sought judgment on the pleadings as to the retroactive application of the increased $1,000,000 coverage.

7.      After submission of the parties' pleadings, oral arguments were held on November 17, 2021.  The Court issued a separate ruling as to Good.[13]  This ruling focuses solely on Liberty Mutual and Plaintiff's respective motions for judgment on the pleadings.

**Party Contentions**

8.      Liberty Mutual argues both that the coverage terms that specified a limit of $250,000 were clear and unambiguous,[14] as was the language that the August 4

---

[13] *See* Order Denying Defendant's Motion for Judgment on the Pleadings, *Handler Corp. v. W. Am. Ins. Co., et al.*, N21C-04-016 VLM, D.I. 30 (Jan. 20, 2022).
[14] Defendant's Opening Brief, D.I. 17, at 11 [hereinafter Defendant's Opening Brief].

wind event constituted a catastrophe and a single occurrence.[15] It further argues any subsequent endorsements to provide for greater coverage are not retroactive to the August date of loss,[16] nor can Plaintiff succeed on its claims for lack of notice or mistake.[17] Lastly, it argues this Court lacks subject matter jurisdiction to consider Plaintiff's alternative claim for reformation.[18]

9.      Plaintiff argues that dismissal is not appropriate where neither the terms "catastrophe" nor "occurrence" are defined in the Policy. It also argues that tornado is not defined as an event under the definition of catastrophe to determine the applicability of the Catastrophe Limit.[19] Further, it disputes Liberty Mutual's interpretation of the term "occurrence," alleging instead that there were multiple occurrences here.[20] Finally, it claims that if the Court determined that the August 4 wind event fell under the definition of a "catastrophe," the coverage available was $1,000,000 under the Policy.[21] And because monetary damages are sought, this Court has subject matter jurisdiction to reform the Policy due to mutual mistake.[22]

---

[15] *Id.* at 14.
[16] *Id.* at 23–25.
[17] *Id.* at 25–30.
[18] *Id.* at 30.
[19] *See* Plaintiff's Answering Brief, D.I. 20, at 14 [hereinafter Plaintiff's Answering Brief].
[20] *Id.* at 18.
[21] *Id.* at 14.
[22] *Id.* at 29–30.

## Standard of Review

10.     A motion for judgment on the pleadings is akin to a motion to dismiss or general demurrer to the plaintiff's complaint.[23]  Under Rule 12(c), the motion may be raised at any time after the pleadings are closed and within such time so as to not delay trial.[24]  The motion accepts as true the allegations in the complaint and contends that they are insufficient as a matter of law to grant relief to the plaintiff.[25]  Where the pleadings raise "any material issue of fact," denial of the motion is appropriate.[26]  Any factual assertions must be contained within the pleadings themselves.[27]

## Discussion

11.     Delaware case law has established that language in a policy is ambiguous when it "is susceptible to two or more interpretations, requiring judicial construction to determine what is actually meant by its use."[28]  Under the rule of

---

[23] *See Fagani v. Integrity Fin. Corp.*, 167 A.2d 67, 75 (Del. Super. 1960).
[24] *See* DEL. SUPER. CT. CIV. R. 12(c).
[25] *See Fagani*, 167 A.2d at 75; *see also Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993) (addressing DEL. CH. CT. CIV. R. 12(c)).
[26] *See Fagani*, 167 A.2d at 75; *see also Desert Equities*, 624 A.2d at 1205 (citing *Fagani*, 167 A.2d at 75).
[27] *See Fagani*, 167 A.2d at 75.
[28] *Sammons v. Nationwide Mut. Ins. Co*, 267 A.2d 608, 609 (Del. Super. 1970) (citing *Apotas v. Allstate Ins. Co.*, 246 A.2d 923, 924 (Del. Super. 1968).

construction, ambiguous language in an insurance contract will cause the language to be construed against the insurer who drafted the contract.[29]

12. Although insurance policies often define an occurrence as an accident[30] this 671-page Policy lacks relevant definitions. Under the "Catastrophe Limit," the Policy specifies that "[t]he most 'we' pay for loss to all buildings or structures in any one occurrence is: $250,000."[31] Yet, the definitions for the terms catastrophe and occurrence are undefined.

13. Liberty Mutual contends definitions were not necessary because the terms are clear and unambiguous. It is incorrect. As the drafter of the insurance policy, it failed to include definitions of terms that cannot be clearly and unambiguously defined. If anything, perhaps at a different procedural juncture, such failures will cause the language to be construed *against* Liberty Mutual, but certainly not in its favor, especially where the relief is dismissal.

14. This Court rejects Liberty Mutual's argument that the Court must liken the coverage analysis here to that of an automobile claim. It argues that—similar to an auto policy that carries $15,000(single)/$30,000(combined) limits—the single occurrence here matches its Catastrophic Limit here at $250,000/$250,000.

---

[29] *See, e.g.*, *Steigler v. Ins. Co. of N. Am.*, 384 A.2d 398, 400 (Del. 1978); *Apotas v. Allstate Ins. Co.*, 246 A.2d 923, 924 (Del. Super. 1968).
[30] *See, e.g.*, *USAA Casualty Ins. Co. v. Carr*, 225 A.3d 357, 360 n.13*; E.I. duPont de Nemours & Co. v. Allstate Ins. Co.*, 879 A.2d 929, 937 (Del. Super. 2004).
[31] Appendix to Defendant's Opening Brief, at A-256.

15.     First, it is unclear if the property damage suffered by Plaintiff was a catastrophe.  The Policy speaks to earthquakes and flood events.  Perhaps this tornado may have been a windstorm covered under other provisions in the Policy, not necessarily as a catastrophe.  Without other information to show the scope of the damage from the storm and with no definition available in the Policy, a factual question exists for the jury to determine whether the windstorm meets the definition of catastrophe.

16.     Even assuming this event fit within the definition of a "catastrophe," the Court does not see how an auto policy likens to this Policy.  For example, it is true that for an auto policy, the insurer could provide individual coverage for a single claim up to $15,000 while multiple claims would provide coverage up to $30,000.  A policyholder who contractually agrees to the coverage also pays a fixed premium for the insurance.

17.     But here, the Builders' Risk policy is not akin to an automobile policy.  It is not fixed and more complicated.  It varies and functions differently from other types of insurance coverage.  Because varying residential units were in different stages of construction, the value sought to be covered varied from month to month.  Thus, depending on the stage of construction, the Policy required Plaintiff to submit to Liberty Mutual monthly reports "of all properties under construction, their current

8

insured value, and the aggregate values of all the properties to be insured."[32] Following receipt of the monthly reports, Liberty Mutual would issue a Policy Change Endorsement which would reflect any changes in the Policy.[33] And on this record, at least one endorsement suggests that the Policy was changed to reflect coverage in the amount of $1,000,000 prior to the date of loss.

18.    Liberty Mutual's analogy does not make sense.  Having a per occurrence limit match the value of a single property would be logical if only one property was insured.  Here, a tornado caused property damage to approximately four houses.  Plaintiff alleges that each house is separately insured.[34]  Accepting the allegations as true, then contractual breaches may have occurred either because coverage has not been provided to the four houses at $250,000 each, or Liberty Mutual has not honored the catastrophe limit of up to $1,000,000.

19.    At this juncture, various issues of material fact exist.  These include, but are not limited to, whether Plaintiff and Liberty Mutual entered into an agreement for insurance with catastrophe limits of $250,000 or $1,000,000, what constitutes an occurrence or a catastrophe, and whether the Policy covered loss or damages for an individual housing unit or the collective multi-housing project.

---

[32] Plaintiff's Answering Brief, at 2–3.

[33] *See, e.g.*, Appendix to Defendant's Opening Brief, at A-259; *see also id.* at A-845 (providing additional information about reporting provisions in Builders' Risk policies).

[34] *See* Amended Complaint, ¶ 7 (claiming each home had separate coverage). *Contra* Defendant's Answer to Amended Complaint, ¶ 7 (denying the $250,000 limit is per home).

20.	Not only do these material issues of fact exist, considerable and dispositive critical disagreements also exist as to the intent of subsequent actions taken by Liberty Mutual when it agreed to increase the coverage to $1,000,000. This leads to Plaintiff's Motion for a ruling as a matter of law.

21.	It is undisputed that Plaintiff requested increased coverage after its claim was denied. It is also undisputed that Liberty Mutual granted this request, increasing the catastrophe limit to $1,000,000,[35] without increasing premiums and subsequently issued its August 2020 Monthly Report Endorsement ("August Endorsement").[36]

22.	Plaintiff relies on the language in the August Endorsement to support its argument that the increased coverage applied retroactively to August 1, 2020, thus covering the losses claimed in this action. Of course, Liberty Mutual disagrees, claiming that the August Endorsement did not alter the endorsement period to a date prior to August 21, 2020, as it would have been an unreasonable business decision for Liberty Mutual to retroactively provide higher coverage.

23.	Since it remains unclear (as argued by Plaintiff) whether this event falls under the Policy as a catastrophe, it is unclear at this stage of the litigation whether this increased Catastrophic Limit is applicable, or if so, whether it applies

---

[35] Appendix to Defendant's Opening Brief, at A-521.
[36] *See id.* at A-555.

retroactively to the date of loss. Perhaps after more discovery, Plaintiff will renew its request for a determination by the Court under Rule 56.

24. As to Liberty Mutual's request to dismiss for lack of jurisdiction on its Plaintiff's alternative claim for reformation, 10 *Del. C.* § 1902 directs that dismissal based solely on a lack of subject matter jurisdiction is unsuitable.[37] Liberty Mutual's Motion to dismiss for lack of jurisdiction is denied.

25. The same applies to Liberty Mutual's request to dismiss Plaintiff's claim for failure to state a claim for mutual mistake. Plaintiff alleges it was never informed a catastrophe limit applied[38] and never agreed to a catastrophe limit.[39] Plaintiff further alleges that the insurance application and subsequent correspondence with Liberty Mutual referenced values of $15,000,000 and had no occurrence limit.[40] The Court finds Plaintiff has established particularity under Delaware Superior Court Civil Rule 9.[41] Therefore, Liberty Mutual's Motion to dismiss for failure to state a claim for mutual mistake is also denied.

---

[37] *See* 10 *Del. C.* § 1902 ("[n]o civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal.").
[38] Amended Complaint, ¶¶ 14, 22.
[39] *Id.* ¶ 16. The Amended Complaint further alleges that the Policy included a catastrophe limit "with terms different and more restrictive than that which was included on Plaintiff's application." *Id.* ¶ 23.
[40] *Id.* ¶ 9.
[41] *See* DEL. SUPER. CT. CIV. R. 9(b).

26.    Lastly, Plaintiff has alleged a sufficient claim for violations under The Delaware Unfair Trade Practice Act ("DUTPA").[42]  Specifically, § 2304 defines a myriad of prohibited acts or practices.[43]  Plaintiff alleges Liberty Mutual violated DUTPA when it overcharged for its coverage.[44]  Plaintiff raises factual issues that includes email communications between the parties,[45] the declaration pages,[46] and "custom and practice" in the industry[47] to survive dismissal.

### Conclusion

For the reasons stated above, Plaintiff has established the existence of material issues of fact.  Therefore, Liberty Mutual's Motion for Judgment on the Pleadings is **DENIED**.  The same issues preclude a finding that the increased catastrophe coverage applies to the date of the loss.  Therefore, Plaintiff's Cross Motion for Judgment on the Pleadings is **DENIED**.

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

---

[42] *See* 18 *Del. C.* § 2301 *et seq.*
[43] *See* 18 *Del. C.* § 2304.  Specifically, under 18 *Del. C.* § 2304(7) it is unlawful to willfully "collect any sum as a premium or charge of insurance, which insurance is not then provided or is not in due course to be provided . . . ."
[44] The claim is essentially that Liberty Mutual charged—and Plaintiff paid premiums for $1,000,000 in coverage and only received $250,000.  *See* Plaintiff's Answering Brief, at 26.
[45] *See* Exhibit A to Plaintiff's Answering Brief.
[46] Plaintiff's Answering Brief, at 24–25.
[47] *Id.* at 24.