569 So.2d 1217 (1990)
Rachael THIAC
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 89-CA-0104.
Supreme Court of Mississippi.
October 31, 1990.
*1218 Norman Breland, Breland & Weatherly, Gulfport, for appellant.
Billy W. Hood, Robert W. Atkinson, Bryan Nelson Allen Schroeder Cobb & Hood Firm, Gulfport, for appellee.
Robert T. Gordon, Jr., Ann Camp, Heidelberg & Woodliff, Jackson, for amici curiae.
Before ROY NOBLE LEE, C.J., and PRATHER and ANDERSON, JJ.,
PRATHER, Justice, for the Court:
This appeal involves uninsured motorist insurance law and presents the question of whether a guest passenger while occupying a vehicle involved in an accident, can also benefit from uninsured motorist insurance carried by the "named insured" on another vehicle not involved in the accident. Holding that the guest passenger failed to establish that the involved vehicle was underinsured under Mississippi's statutory definition, this Court denies coverage and affirms the Circuit Court of Hancock County.

I.
On March 28, 1987, Rachael Thiac was a guest passenger in a 1971 Porsche automobile driven and owned by Robert Ellzey. Due to Ellzey's negligence, the automobile left the road and hit a tree. Thiac sustained serious injuries, none of which are in dispute here. Ellzey was killed in the accident.
Prior to the accident, State Farm Mutual Automobile Insurance Company (State Farm) had written a single automobile insurance policy covering the 1971 Porsche driven by Ellzey, and involved in this accident. This policy contains liability limits for bodily injury of $25,000.00 per person, $50,000.00 per accident, and identical uninsured/underinsured motorist limits, and also contains a medical payment benefits clause of $5,000.00.
In addition to the Porsche policy, State Farm also insured another vehicle belonging to Robert Ellzey, a 1978 Datsun sedan. The separate policy covering the Datsun automobile contains uninsured motorist limits of $10,000.00 per person, $20,000.00 per accident. The Datsun was uninvolved in the March 28, 1987 accident that killed Ellzey and injured Thiac.
Following the accident, Thiac entered into a settlement under the liability portion of the Porsche policy as a guest passenger and executed a release in favor of State Farm and the Ellzey estate for $25,000.00, representing maximum liability benefits, and $5,000.00 maximum medical payment benefits.
Thiac subsequently made demand on State Farm for underinsured motorist benefits on the uninvolved Datsun vehicle in the amount of $10,000.00. No issue is raised questioning that Thiac's damages would exceed these combined limits. It is also undisputed that Thiac had no automobile insurance coverage of her own. It was Thiac's position that she was entitled to "stack" the uninsured motorist coverage of the Porche policy and the uninsured motorist coverage on the Datsun automobile insurance policy issued by State Farm to Robert Ellzey, the deceased, creating underinsured motorist benefits. State Farm denied that it owed any uninsured motorist benefits under the Datsun policy to Thiac, and filed a complaint for declaratory judgment in the Circuit Court of Hancock County. Within that suit, Thiac then filed a motion for summary judgment and State Farm filed a cross-motion for summary judgment. The trial court entered an order denying any and all relief to Thiac and sustained State Farm's cross-motion. Thiac then perfected her appeal to this Court.

II.

DID THE TRIAL COURT INCORRECTLY GRANT SUMMARY JUDGMENT IN FAVOR OF STATE FARM BY HOLDING THAT RACHAEL THIAC DID NOT QUALIFY FOR UNDERINSURED MOTORIST BENEFITS UNDER AN INSURANCE POLICY ISSUED TO THE DECEASED DRIVER OF THE AUTOMOBILE, ROBERT ELLZEY?
Thiac's argument is that she should be allowed to "stack" the $25,000.00 uninsured *1219 motorist coverage on the Porsche with the $10,000.00 uninsured coverage of the Datsun sedan. By combining the two figures, she asserts the total uninsured (UM) motorist coverage becomes $35,000.00. She asserts that the combined uninsured limits exceed the $25,000.00 liability coverage on the Porsche, and thus entitles Thiac to underinsured motorist benefits under § 83-11-103(c)(iii) of $10,000.00. State Farm asserts that Thiac is not entitled to stack coverages.
In analyzing an uninsured/underinsured motorist claim, the primary applicable authority is the Mississippi Code Annotated § 83-11-101, et seq (Supp. 1989). A summary of the background and purposes of this type of insurance was discussed by this Court in Wickline v. United States Fidelity & Guaranty Co., 530 So.2d 708, 711 (Miss. 1988).
To sustain a claim for benefits as a result of injuries sustained from an underinsured motorist, the plaintiff must initially establish that the insured motor vehicle was, in fact, underinsured. Miss. Code Ann. § 83-11-103(c)(iii) (Supp. 1989) incorporates the concept of an underinsured motor vehicle into our statutory scheme by defining the term "uninsured motor vehicle" as:
[A]n insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage ...
To fully understand this addition to our statutory scheme, we must be cognizant of the injustices fostered by our UM act prior to this amendment, when our uninsured motorist scheme did not recognize underinsured motorists. Before the 1979 amendment, an individual with the foresight to purchase adequate uninsured motorist protection would lose this protection if he sustained injury at the hands of an inadequately insured motorist instead of a motorist who was totally uninsured. See McMinn v. New Hampshire Insurance Company, 276 So.2d 682 (Miss. 1973) (Plaintiff with $10,000.00 in UM coverage was seriously injured by a tortfeasor who had $5,000.00 in liability coverage. In spite of the fact that plaintiff's damages exceeded $25,000.00, this Court declined to allow plaintiff to recover under his UM coverage because the tortfeasor was not uninsured, within the meaning of our statute).
By incorporating the concept of an underinsured motorist into our uninsured system, the legislature sought to remove the penal effect which our statute had upon an individual who had procured his own uninsured motorist coverage. The amendment allows one to protect oneself to the extent of whatever limits one deems appropriate. This means that coverage will always be available and is not dependent on the fortuitousness of the amount of insurance covering the tortfeasor. If the tortfeasor has coverage less than the coverage obtained by the injured party, the tortfeasor is underinsured. Implicit in this notion of an underinsured motorist is the notion that the injured person has taken some steps to protect oneself and is entitled to utilize the protection which one has secured.
In determining whether an insured vehicle is underinsured, we have compared the limits of liability coverage on that vehicle to the uninsured limits provided through the injured party's own coverage. See Washington v. Georgia American Ins. Co., 540 So.2d 22 (Miss. 1989) (The tortfeasor was not underinsured as to Washington where tortfeasor's liability coverage was not less than Washington's own UM coverage); Cossitt v. Federated Guar. Mut. Ins. Co., 541 So.2d 436, 440 (Miss. 1989) (The tortfeasor was not underinsured as to Cossitt since the limit of liability provided by his insurer was not less than the limit provided by Cossitt's own uninsured motorist coverage); Wickline v. U.S. Fidelity & Guar. Co., 530 So.2d 708, 713 (Miss. 1988) (Tortfeasor was underinsured since the liability coverage provided by his insurer was less than decedent's coverage).
The statutory definition of an underinsured motorist contained in § 83-11-103(c)(iii) cannot be read in isolation *1220 but must be interpreted in light of other pertinent provisions within our uninsured motorist scheme. Miss. Code Ann. § 83-11-101(1) (Supp. 1989) is such a provision which provides, in part:
No automobile liability policy ... shall be issued ... unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law ... however, at the option of the insured, the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirement set forth by this section. (Emphasis added).
Because § 83-11-101(1) prohibits issuance of uninsured coverage in an amount greater than the liability coverage provided for in the policy, it follows, in one-vehicle accidents, that unless the injured person, as referred to in § 83-11-103(c)(iii), is allowed to stack his uninsured motorist coverage with the coverage on the insured motor vehicle, the insured motor vehicle will never be un[der]insured because the uninsured motorist limits on such vehicle will never exceed its liability limits.
This Court has consistently construed our uninsured statute from the perspective of the insured. See State Farm Mut. Auto. Mut. Ins. Co. v. Nester, 459 So.2d 787, 790 (Miss. 1984); Hodges v. Canal Insurance Co., 223 So.2d 630, 634 (Miss. 1969). From Thiac's standpoint, as an individual with no insurance coverage of her own, the tortfeasor, Ellzey, with $25,000.00 in liability coverage, is not underinsured.
In Wickline, 530 So.2d at 712, this Court recognized that:
Under the Mississippi UM statute as amended, stacking of the injured person's limits is allowed for the purpose of qualifying the tortfeasor as an underinsured motorist. (Emphasis Added).
In Wickline, a guest passenger was killed when the Thunderbird in which she was riding collided with a parked vehicle. That accident, like the one at hand, was caused solely as a result of the host driver's negligence. The Thunderbird was covered by an insurance policy which provided $10,000.00/$20,000.00 liability coverage along with equal amounts of UM benefits. In addition to the Thunderbird, four separate cars were covered under the same policy. The decedent was also insured under two State Farm policies which provided UM coverage of $10,000.00/$20,000.00.
Addressing the issue of which coverage is available to the injured party for the purpose of qualifying a tortfeasor as an underinsured motorist, at page 713, this Court stated:
If an injured person is insured under more than one policy of uninsured motorist insurance, the limits of each such policy are "applicable" to him. If he is injured while riding as a passenger, the uninsured motorist coverage of the vehicle in which he is riding, in addition to that of his own vehicles, is applicable to the injured person. (Emphasis added), (Citations omitted).
This Court distinguishes the different approaches we took in Wickline concerning stacking for the purpose of establishing the insured vehicle as underinsured, as opposed to stacking for the purposes of recovering damages.
In Wickline, in determining that the host vehicle was underinsured, the trial judge did not allow the Wicklines to stack the other four vehicles covered under the host vehicle's policy, but looked initially to their own coverage ($20,000.00) and stacked that with the UM coverage ($10,000.00) on the host vehicle only. On the other hand, once it was established that the host vehicle was underinsured, this Court overruled the trial court and allowed the Wicklines to stack all vehicles under the host driver's policy, in addition to their own State Farm policies, to recover damages.
The rule of law which this Court has established in interpreting our statutory *1221 definition of an underinsured motorist is: for the purpose of qualifying the host vehicle as underinsured, a guest passenger is permitted to stack her own UM coverage with the UM coverage on the host vehicle.
In the current case, Thiac had no insurance of her own. To allow her to stack Ellzey's Datsun for the purposes of determining whether the Porsche was underinsured would be contrary to the legislative purpose in adopting the underinsured motor vehicle concept as part of our statutory scheme. As pointed out in Cossitt v. Federated Guar. Mut. Ins. Co., 541 So.2d 436, 442 (Miss. 1989), Thiac had the means to protect herself against tortfeasors who carry insurance which is legally sufficient but inadequate to compensate the damages sustained. This is the policy behind our legislature's incorporation of the "underinsured" concept into our legislative scheme. Thiac, "like all other similarly situated motorists, could have contracted with her carrier for excess coverage beyond the statutory minimum, thereby rendering the tortfeasor", Ellzey, underinsured per § 83-11-103(c)(iii). "That the Uninsured Motorist Act provides this option leads us to conclude that uninsured motorist coverage was not intended to apply in situations like the one at bar." Thiac cannot convert Ellzey's coverage on his Datsun into coverage for Thiac for the purpose of classifying Ellzey as an un[der]insured motorist.
It is the legislative intent behind § 83-11-103(c)(iii), not the fact that the Datsun was insured by a separate State Farm policy, which dictates that Thiac should not be allowed to stack Ellzey's Datsun policy to qualify the Porsche as underinsured. Furthermore, by upholding the trial court in Wickline, which had allowed the guest passenger/injured person to stack her own coverage with the coverage on the host vehicle only, we recognized that for the purpose of establishing whether an insured host vehicle is, in fact, underinsured, we look no further than the guest passenger's own coverage and the coverage on the host vehicle.
Because Rachael Thiac had no uninsured coverage of her own and because the host vehicle provided liability coverage of $25,000.00, the liability coverage was not less than Thiac's UM coverage. Therefore, the host vehicle was not an uninsured vehicle for the purposes § 83-11-103(c)(iii).
This Court therefore affirms the holding of the Circuit Court of Hancock County. The other assignments of error are without merit and need not be addressed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.
BLASS, J., not participating.