Kade MASCARELLA, Plaintiff,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.**

**No. CIV.A. 2:98CV289PG.**

United States District Court, S.D. Mississippi, Hattiesburg Division.

Nov. 17, 1999.

Stephen K. Thomas, James H.C. Thomas, Jr., Ray T. Price, Ray T. Price, Hattiesburg, MS, for Kade Mascarella, plaintiffs.

Michael W. Baxter, Charles Greg Copeland, Copeland, Cook, Taylor & Bush, Ridgeland, MS, for United States Fidelity & Guaranty Insurance Company, defendants.

## *MEMORANDUM OPINION AND ORDER*

PICKERING, District Judge.

This matter is before the Court on cross motions for summary judgment filed on behalf of the parties. The Court having reviewed the motions, the responses, the briefs of counsel, the authorities cited, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds as follows, to wit:

### *FACTUAL BACKGROUND*

On September 10, 1995, the Plaintiff Kade Mascarella was driving, within the course of his employment, a 1987 Oldsmobile belonging to his employer Development Concepts, Inc., when he was involved in a two vehicle automobile accident. The parties agree that the accident was the result of the negligence of the driver of the other automobile, Alexander. Sutherland.

Sutherland was insured by a policy of insurance issued by Progressive Insurance Company with liability limits of $100,000 per person. The automobile which Mascarella was driving at the time of the accident was covered under a fleet insurance policy issued by the Defendant USF & G to Development Concepts, Inc. There were eight vehicles listed on that policy with uninsured motorist coverage of $25,000 per accident per vehicle.

Plaintiff, with the approval of Defendant, settled with Sutherland by accepting his $100,000 policy limits. Subsequent thereto USF & G paid Plaintiff $25,000 under its uninsured motorist coverage on the 1987 Oldsmobile automobile which Plaintiff was driving. Thereafter Defendant has taken the position that it wrongfully paid that $25,000 in that the Sutherland vehicle did not meet the statutory definition nor the policy definition of an uninsured or underinsured vehicle.

The Plaintiff contends that the Sutherland vehicle was underinsured and therefore he is entitled to seek additional coverage from the Defendant USF & G. The crux of the Plaintiff's argument is that he should be entitled to stack all eight vehicles insured under the USF & G policy for a total of $200,000 UM coverage. This coverage, when compared to the $100,000 underlying liability coverage on the Sutherland automobile, results in the Sutherland vehicle being underinsured to the extent of $100,000. It is this additional $100,000 coverage, less the $25,000 paid by Defendant to Plaintiff, that the Plaintiff is seeking to recover.

The parties filed cross motions for summary judgment on the issue of whether or not the Sutherland vehicle was uninsured or underinsured. This matter has been briefed and is now ready for decision. It appears that the plaintiff has incurred in excess of $65,000 in medical expenses and that his injuries may well support an award for more damages than he has thus far recovered. However, the Defendant asserts that the nature and extent of the

Plaintiff's injuries are disputed and that such injuries are irrelevant and not necessary to a resolution of the legal issue pending before the Court which is, as stated, whether or not the Sutherland vehicle was underinsured. This opinion does not address the issue of whether Plaintiff was damaged more than $100,000, it only addresses whether there is or is not additional coverage available to Plaintiff.

There is much dispute among the parties as to which section of the insurance policy governs the coverage question in this case. The Defendant contends that Subsection 4 of the "Additional Definitions" section contained on pages 2 and 3 of the Mississippi UM Endorsement (C.A. 21 28 12 94) to the policy controls. That section provides that in order to be an uninsured (underinsured) motor vehicle within the terms of the policy, the liability limits available to the uninsured (Sutherland vehicle) ($100,000) had to be "less than the sum of (1) the limit of liability for uninsured motorist coverage applicable to the *vehicle the insured was occupying* at the time of the accident [$25,000], and (2) any other limit of liability for uninsured motorist coverage applicable to the insured as a named insured or family member [none]." (emphasis added). Thus, Defendant argues that there is no additional coverage since Plaintiff does not meet the definition of an underinsured.

The parties do not dispute that Mascarella was not a specifically named insured, nor was he a family member for purposes of the USF & G policy in issue. Nor does the Plaintiff have any other personal coverage available to him as a named insured or family member under any policy covering any other vehicle owned by him and not occupied by him at the time of the accident.

Plaintiff argues that subsection 1 of Section D, found under the "Limits of Insurance" section of the policy mandates coverage because it provides "if there is more than one covered auto, *our limits of insur-*

*ance* for any one accident is the *sum of limits for those autos you own which are covered autos.*" (emphasis added). Relying on this language the Plaintiff contends that he is entitled to stack all eight vehicles covered by the USF & G policy to aggregate the $200,000 coverage to compare to the $100,000 liability coverage on the Sutherland automobile. The problem with this argument is that this language is contained in the section which delineates the limits of liability not the section that defines who is covered. In all policies, and under Mississippi law, the question of who is an "uninsured" or "underinsured" must be resolved before one ever reaches the question of the limits of liability. In other words, eligibility for coverage must be established before the question of the limits of that coverage is ever reached.

The Defendant points out that there is a clear distinction in Mississippi between stacking for purposes of determining whether a tort feasor qualifies as an uninsured or underinsured motorist and stacking for purposes of later establishing the amount of coverage available for compensation. The Defendant admits that *if* the Sutherland vehicle qualifies as an underinsured vehicle then the stacking of the eight vehicles listed in USF & G's policy would be appropriate for determining limits of liability if the Plaintiff can establish entitlement to such damages. However, Defendant argues that coverage on all eight vehicles cannot be stacked to determine coverage, but that only the coverage on the vehicle in which Plaintiff was riding can be stacked to determine coverage.

The Mississippi uninsured/underinsured motorist statute has caused much litigation. Much or most has had to do with the issue of stacking. The decisions have sometimes been inconsistent, even contradictory. But in general, the Mississippi Supreme Court has clearly expressed that a liberal interpretation of the statute should be utilized to provide coverage whenever possible. This clearly is demonstrated by the following analysis and specific statements of the Court to that effect. The cumulative effect of these cases has been to expand coverage and limits.

The primary case relied upon by the Plaintiff, *Brown v. Maryland Casualty Company*, 521 So.2d 854 (Miss.1987), holds that "[t]he justification for stacking lies not in who has paid for the extra protection, but rather that the protection has been purchased. The benefits flow to all persons insured." 521 So.2d at 856, quoting *Sayers v. Safeco Ins. Co.*, 192 Mont. 336, 628 P.2d 659, 662 (1982). This case seemed to eliminate the distinction of Class I and Class II insureds for most purposes and was the first case decided by the Mississippi Supreme Court which held that a Class II insured occupant is entitled to stack the coverages held by the named insured under his own UM policy. This case dealt strictly with what limits of liability were available and did not specifically address the issue of qualifying a vehicle for underinsured status.

*Brown* was followed by *Wickline v. USF & G*, 530 So.2d 708 (Miss.1988). The *Wickline* court again expanded the scope of UM coverage. The court in that case was presented with the question of whether or not a guest passenger could "stack Class I uninsured motorist coverage provided by his insurer with Class Two uninsured motorist coverage provided by his host's insurer to cause an otherwise insured vehicle to become uninsured as to the host's uninsured motorist coverage." 530 So.2d at 711. The *Wickline* Court, citing previous decisions, noted that an insured person was able to stack all of the policies of his own insurance and then concluded that the insurance applicable to a car in which he was a passenger was also available for stacking. *Wickline* did not decide that other vehicles covered by the same policy covering the vehicle in which a Class II plaintiff was riding should not be stacked, but merely concluded that the coverage as to the vehicle in which he was a passenger would be stacked in determining if there was more uninsured motorist

coverage available than liability insurance in order to meet the criteria of being an uninsured vehicle. In *Wickline*, the court noted that the earlier cases "talk[ed] much of Class One and Class Two insureds" and went on to note that "[c]areful study of those cases makes clear that this Court looked too much to the decisions of other states, particularly Virginia." (citations omitted). 530 So.2d at 714. The court then concluded ". . . the operative provisions of the Mississippi Uninsured Motorists Act have been declared as a matter of positive law to provide that all classes statutory insureds may recover of the UM insurer all amounts he or she may be entitled to recover as damages from the uninsured motorist, limited only by the limits of UM coverage multiplied by the number of vehicles insured in the policy." *Id.* at 715. It appeared that *Wickline,* for all practical purposes, did away with the distinction between Class One and Class Two insureds.

However, two years later in *Thiac v. State Farm Automobile Ins. Co.*, 569 So.2d 1217 (Miss.1990), the Supreme Court wrote: "This Court distinguishes the different approaches we took in *Wickline* concerning stacking for the purpose of establishing the insured vehicle as underinsured, as opposed to stacking for the purpose of recovering damages." 569 So.2d at 1220. The *Thiac* Court reasoned that the amendment to the statutes which provided for underinsured coverage in addition to uninsured coverage was intended to prevent a person who had provided more protection for themselves than would be available when an adverse motorist had some coverage but not as much as Plaintiff had purchased for himself from being cut out of the additional coverage Plaintiff had purchased.

The *Thiac* Court thus reasoned that if the insured party had not himself or herself taken action to increase his or her coverage, then the increase provided by the underinsured motorist statute would not be available to that person. As a result, there would be no stacking of a second coverage for an automobile insured by the same policy covering the automobile involved in the accident, such as that in which Thiac was a guest passenger. The Court concluded "[b]ecause Rachel Thiac had no uninsured coverage of her own . . . the liability coverage was not less than Thiac's UM coverage." 569 So.2d at 1221. Additionally the Court said "Thiac had no insurance of her own. To allow her to stack Ellzey's Datsun for the purpose of determining whether the Porsche was underinsured would be contrary to the legislative purpose in adopting the underinsured motor vehicle concept as part of our statutory scheme." *Id.* In determining "whether an insured host vehicle is, in fact, underinsured, we look no further than the guest passenger's own coverage and the *coverage on the host vehicle.*" *Id.* (emphasis added).

There are two distinctions between the present case and *Thiac.* Thiac was a passenger. Mascarella was the driver of the host vehicle, not a passenger, and secondly, Mascarella was an employee of the owner of the covered vehicle, not a gratuitous guest. It could be argued that by virtue of his employment, Mascarella had obtained his own coverage, which seemed to have been a part of the analysis and consideration for the holding in *Thiac.*

Defendants also rely on the case of *State Farm Mutual Auto. Ins. Co. v. Davis,* 613 So.2d 1179 (Miss.1992), which cited *Wickline* and *Thiac* and concluded that there would be no stacking as to other vehicles owned by the owner of the host car. The distinction in that case seems to be that all of the "Hollomans' cars were covered under separate policies." 631 So.2d at 1182. However, the Defendants in this case do not argue that the holding in *Davis,* which prohibited stacking to determine limits of liability is applicable to this case since they concede that if Mascarella is covered, he is entitled to stack all of the vehicles owned by his employer. *Davis* did not allow

stacking for either determining coverage or to determine a higher limit of liability.

It would seem that the later case of *U.S. F & G v. Ferguson,* 698 So.2d 77 (Miss. 1997), resolved the issue presented to the court in this case. In *Ferguson,* the Mississippi Supreme Court said "[w]e now affirmatively declare that the public policy of this State mandates stacking of UM coverage for every vehicle covered under a policy, regardless of the number or amount of the premium(s) paid for UM coverage." 698 So.2d at 79. The Court reiterated " 'stacking has become a positive gloss upon our uninsured motorist act.' " *Id.* at 80, quoting *Harris v. Magee,* 573 So.2d 646, 653–55. The Court concluded, "We will no longer permit insurance companies to circumvent our decisions and defeat public policy by denying insureds their full aggregate UM coverage for which they pay a premium. Regardless of the number of premiums paid or the amount of the premium(s), we will allow stacking of uninsured motorist coverage for *all cars* covered under insurance policies for UM coverage." 690 So.2d at 82. (emphasis added).

In *Ferguson,* the Supreme Court reiterated what the Court had said in a number of cases—that the statute is to be liberally construed so as to achieve compensation. The reason being that "uninsured motorist coverage is designed to provide innocent injured motorists a means to recover *all sums* to which they are entitled *from an uninsured motorist.*" *Id.* at 80 (citations omitted) (emphasis added). It should be noted that the language from *Ferguson* that a plaintiff should be allowed to recover "all sums" to which he might be entitled to recover "from an uninsured motorist" is an extremely broad statement of policy by the Mississippi Supreme Court. The Mississippi Supreme Court spoke of allowing stacking on "all cars" covered by the uninsured motorist policy to allow the plaintiff to recover "all sums" due from the uninsured motorist. The breadth of the *Ferguson* decision was noted by Chief Judge Dan Lee who disagreed with the majority opinion although specially concurring in the result when he said "the majority's bold proclamation that all attempts to limit stacking are void as against public policy is overly broad. . . ." *Id.* at 82.

The Court would conclude that *Ferguson* controls the result of this decision but for the case of *Fidelity and Guaranty Underwriters, Inc. v. John L. Earnest,* 699 So.2d 585 (Miss.1997). In that case the Court again expanded UM coverage by holding that a carrier could not limit its uninsured motorist limits by money it paid out under its general liability policy to other passengers. However, the Court, by way of dictum, reiterated the distinction that was set out in *Thiac* relative to Class One and Class Two insureds. The Court noted;

There is precedent in our State's UM law for establishing a more liberal standard with regard to the amount of recovery available to a UM insured than for determining initial eligibility for UM benefits. In *Thiac v. State Farm Mut. Auto. Ins. Co.,* 569 So.2d 1217, 1220 (Miss.1990), this Court held that, for purposes of determining whether a given vehicle is underinsured, "we look no further than the guest passenger's own coverage and the coverage on the host vehicle." This Court in *Thiac* reaffirmed an earlier holding in *Wickline,* however, that, once a given vehicle is determined to be underinsured, the amount of recovery available to the insured is determined by stacking not only the guest passenger's coverage and the coverage on the host vehicle, but also other vehicles covered by the host's policy. *Thiac,* 569 So.2d at 1220–21. This Court's decision today thus establishes a more liberal "fund" for recovery by a UM plaintiff who has met the statutory UM eligibility requirements in a manner similar to that adopted by this Court in *Wickline/Thiac.*

⋅　　⋅　　⋅　　⋅　　⋅

It is a very important distinction, however, that Miss.Code Ann. § 89–11–

103(c)(iii), as well as this Court's decisions in *Washington* and *Cossitt,* deal with the issue of whether a particular tortfeasor is properly considered to be an uninsured motorist, but not with the issue of the amount of recovery that is available to the tortfeasor once a particular motorist is classified as uninsured. 699 So.2d at. 590.

The ruling of the Court in *Earnest* was, This Court has consistently endeavored to interpret our UM laws from the perspective of the insured, and it would be contrary to this approach to reduce limits applicable to a particular UM insured by amounts paid to another party.

*Id.* at 591. The *Earnest* case, which is one the primary cases relied upon by Defendant even though it does have the restrictive language argued by the Defendant, had the effect of expanding the amount of money available to an underinsured motorist which was consistent with the steady line of Mississippi cases enunciating a liberal interpretation of UM coverage in order to provide greater coverage and greater limits of liability.

The confusion over how to interpret the Mississippi underinsured motorist law is no where more clearly illustrated than by the two different positions taken by Defendant in this case. As noted, Plaintiff received $100,000 from the tortfeasor (the purported underinsured motorist). Defendant then paid Plaintiff $25,000, which was the amount of uninsured motorist coverage designated per vehicle in the subject policy applicable to the vehicle Plaintiff was driving at the time of the wreck. Since the adverse motorist was negligent and had coverage of $100,000 and since the policy which is the subject of this lawsuit provided only $25,000 coverage per vehicle, the only way that plaintiff could have qualified to receive the $25,000 underinsured benefits which Defendant voluntarily paid would have been to stack the coverage of all the vehicles covered by the subject policy *to determine coverage.* Defendant, by its actions stacked the coverage on all the vehicles covered by the subject policy to determine coverage but then decided that *stacking was not appropriate to determine the limits of liability* to which Plaintiff was entitled to recover and that Plaintiff could only recover $25,000 which was the limit of liability applicable to the vehicle Plaintiff was driving. Defendant now takes just the opposite position. Defendant now contends that it is not appropriate to stack the coverage as to all the vehicles covered by the subject policy to determine coverage, but concedes that if coverage is found, then stacking would be appropriate to determine its limits of liability. In essence the Defendant has changed its position on both the question of whether stacking is permitted to determine coverage and on the additional issue of whether stacking is allowed to determine the limits of liability. Defendant now takes a position on each of these two questions diametrically opposite to the position it took on each when it paid Plaintiff $25,000. Defendant has not changed its position on just one of these issues, it has changed its position on both, making crystal clear the confusion over the proper interpretation of stacking under Mississippi law.

The parties agree that the Mississippi Supreme Court has never ruled on the precise question of whether "stacking of the limits of liability as to each automobile covered by a fleet policy to determine status as an uninsured motorist is or is not permissible when the plaintiff seeking to stack was an employee of the purchaser of the fleet policy and was driving an automobile owned by the purchaser of the fleet policy at the time of the accident involved." To that extent this is a case of first impression and this Court would ordinarily be required to make an *Erie* guess. However, even though the Mississippi Supreme Court has never specifically answered the precise question presented herein, it has written on at least two occasions specific language that prohibits recovery in this case. Although this Court has the authori-

ty to make an *Erie* guess in a situation where the Mississippi Supreme Court has not spoken, this Court does not have the power to make a decision contrary to express language written by the Mississippi Court even though this Court believes that if the Mississippi Supreme Court were *now* presented with this precise issue it would mandate coverage. This Court believes that the Mississippi Supreme Court would find coverage by finding either that (1) the policy is ambiguous, (2) that an employee under the circumstances of this case is a named insured[1] or (3) simply by abolishing the distinction between Class II and Class I insureds.[2] However, at this stage, the Mississippi Supreme Court has not done this and has written in its opinions language specifically to the contrary.

Almost all of the decisions of the Mississippi Supreme Court on the issue of stacking have been under the broad umbrella of the proposition that uninsured motorist coverage is to be liberally construed to provide coverage to compensate an uninsured or underinsured individual for all of his damages. If this Court were to follow the reality of what the Mississippi Supreme Court has done rather than the specific language utilized by that Court, this Court would find coverage in this situation.

Although this Court believes that the Mississippi Supreme Court, if it was presented with the specific facts of this case, would conclude that the coverages of each of the automobiles in the Development Concepts, Inc., policy should be stacked in order to determine coverage as well as limits of liability, the Mississippi Supreme Court has not so held and appears in the *Thiac* case to have concluded otherwise. Although *Ferguson* seemed to overrule *Thiac* as to the distinction between Class One and Class Two insureds, it did not do so expressly and the Mississippi Supreme Court in *Earnest* by way of dictum reiterated that *Thiac* is controlling law in Mississippi. The Court would certify this matter to the Mississippi Supreme Court if it had the power to do so. However, in the absence of the power to do that, the Court must decide as best it can how that Court has *previously* ruled and apply those rulings to the facts currently before it, as it is bound to do. When the Mississippi Supreme Court has spoken this Court is *Erie* bound to follow the precedent of what the Mississippi Supreme Court has said and cannot *Erie* guess that the Mississippi Supreme Court would rule otherwise if this

1. Defendant argues that the Mississippi Supreme Court has held that an employee is not a named insured, relying upon *Steinwinder v. Aetna Casualty and Surety Company*, 742 So.2d 1150. The Mississippi Supreme Court in *Steinwinder* in what appears to be a plurality decision concluded that "[T]his court adopts the holding of the majority of jurisdictions and concludes that a corporate shareholder is not solely by virtue of being a shareholder entitled to uninsured motorist coverage under an insurance policy where the corporation is the only named insured." The Mississippi Supreme Court in that case limited its holdings to that of a shareholder officer. However, the plaintiff in that case clearly was an employee of the named insured and was acting within the scope of his employment. However, the plaintiff in that case was not occupying an insured vehicle as was the plaintiff in this case. Again, even though the *Steinwinder* case seems to answer the question of whether an employee is a

named insured, it is the opinion of this Court that the holding would have likely been different if the plaintiff had been occupying *an insured vehicle*. This conclusion is reached because the overall effect of the decisions of the Mississippi Supreme Court has broadened not restricted coverage. Additionally, few cases before the Mississippi Supreme Court involved non covered vehicles. The cases expanding coverage have almost exclusively involved covered vehicles.

2. It appears that in many of the cases considered by the Mississippi Supreme Court there has been no distinction made between stacking coverages for determining whether a vehicle is uninsured or underinsured and determining limits of liability. It appears that in many cases that issue just simply was not raised. But as already noted, the cumulative effect of the decisions by the Mississippi Supreme Court plainly has been to expand coverage.

issue should be again presented to the Mississippi Supreme Court. This Court must follow what the Mississippi Supreme Court has said, not what this Court believes the Mississippi Supreme Court intended, or would do if it were again presented with this issue.

It is the opinion of this Court that the Sutherland vehicle which collided with the Plaintiff was not "underinsured" as that term is defined in the policy, or under the language of previous Mississippi case law. Accordingly, this Court must hold, as it is *Erie* bound to do, that the USF & G policy applicable to the 1987 Oldsmobile which the Plaintiff was driving at the time of the accident provided no additional UM coverage to Plaintiff.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Plaintiff's motion for summary judgment is denied and the Defendant's motion for summary judgment is granted. A separate judgment will be entered herein in accordance with Rule 58. Fed.R.Civ.P.