Raymond Neil NETTLES

v.

TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, a Connecticut Corporation, Travelers Indemnity Company of Illinois, an Illinois Corporation, Travelers Company Doe, a Corporation, and State Farm Mutual Automobile Insurance Company, an Illinois Corporation.

Civil Action No. 2:00–CV–223–KS–JMR.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Feb. 10, 2005.

Reginald Arthur Gray, III, Reginald Arthur Gray, III, Attorney, Hattiesburg, MS, for Plaintiff.

Richard F. Yarborough, Jr., Aultman, Tyner, Ruffin & Yarborough, Ltd, Columbia, MS, Alfonso Nuzzo, Robert Niles Hooper, Markow, Walker & Reeves, Jackson, MS, Reginald Arthur Gray, III, Reginald Arthur Gray, III, Attorney, Hattiesburg, MS, Billy W. Hood, Allen, Vaughn, Cobb & Hood, Gulfport, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

STARRETT, District Judge.

This case is before the court on separate Motions for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56(b) and (c) by Defendants Travelers Property Casualty Insurance Company and State Farm Mutual Automobile Insurance Company. The court, having reviewed the motions, briefs, pleadings and exhibits on file as well as applicable law and being thus fully advised in the premises, finds that the Motions for Summary Judgment filed by the defendants are well taken and should be granted. The court further finds more specifically as follows:

## FACTUAL BACKGROUND

Raymond Neil Nettles (hereinafter "Nettles") was an employee of Dickerson and Bowen Paving Company (hereinafter "Dickerson and Bowen"). He was a resident of Hattiesburg, Mississippi, and

worked as business administrator at the headquarters of Dickerson and Bowen in Brookhaven, Mississippi. As part of his compensation Nettles was furnished a vehicle for business and personal use. The vehicle, a 1996 Chevrolet Lumina, was insured by a policy of insurance written by Travelers Property Casualty Insurance Company. On October 5, 1998, Nettles was driving the Lumina to work when he collided with a tractor-trailer rig owned by Parden Trucking and being operated by Lonnie Parden. Nettles was critically injured in the accident, and although he did survive, he required a long and expensive hospitalization and extensive therapy.

The Travelers policy that covered the Lumina also covered 137 other vehicles owned by Dickerson and Bowen or one of its subsidiaries. The policy provided $25,000.00 UM/UIM coverage per accident on the Lumina and each of the other vehicles. Nettles was not a named insured on the Travelers policy. In addition, Nettles had three State Farm policies of his own covering three personal vehicles, each providing $25,000.00 per person UM/UIM coverage. Parden Trucking had a liability policy written by AXA Global with liability limits of $1,000,000.00 on the tractor-trailer being driven by Lonnie Parden at the time of the accident.

Nettles instituted this action against Travelers and subsequently by amended complaint, State Farm, claiming that he was owed UM/UIM coverage not just under his three personal State Farm policies but also under Dickerson & Bowen's Travelers fleet policy. Both insurers timely responded with denials of any liability for Nettles' claims. Both insurers now seek summary judgment based on their contentions that Mississippi law only allows stacking of Nettles' own UM coverage with the UM coverage on the Lumina with the results that Parden's vehicle does not qualify as underinsured and Nettles cannot make a valid UIM claim against either of them.

Shortly prior to Nettles' filing of this action, this Court rendered a decision in *Mascarella v. U.S. Fidelity and Guar. Co.*, 71 F.Supp.2d 598 (S.D.Miss.1999), a case very similar to this one. The *Mascarella* decision was appealed to the Fifth Circuit Court of Appeals, and Nettles' case was held in abeyance pending the outcome of that appeal. The Fifth Circuit, in apparent recognition of the Mississippi appellate courts' inconsistent rulings in stacking cases, certified to the Mississippi Supreme Court the question "whether an injured insured is entitled to stack the underinsured motorist coverage of other vehicles covered under his fleet policy, thereby making the third-party tortfeasor's vehicle an underinsured motor vehicle." *Mascarella v. United States Fidelity and Guar. Co.*, 833 So.2d 575, 576 (Miss.2002). The Mississippi Supreme Court answered the question in the negative. The Fifth Circuit accordingly affirmed the district court's grant of summary judgment in favor of the insurer on that court's holding that the UM coverage on other vehicles insured by the fleet policy could not be stacked to determine whether the tortfeasor's vehicle was underinsured. *Mascarella v. United States Fidelity and Guar. Co.*, 62 Fed. Appx. 556 (Table), 2003 WL 1202753 (5th Cir. Feb.24, 2003), *aff'g* 71 F.Supp.2d 598 (S.D.Miss.1999).

As *Nettles* is a diversity action, what now remains is for this court to apply the ruling in *Mascarella* and other Mississippi precedent on the stacking issue, which this court is *Erie*-bound to follow. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## ISSUES

This court is under no illusion that this opinion will once and for all clarify the

"stacking" issue. Through the years we have seen "bright line" tests become dim and circuitous as resourceful attorneys have developed subtle fact-specific distinctions that have prevented courts from settling the law on stacking. Although the Mississippi Supreme Court has stated "[w]e now affirmatively declare that the public policy of this State mandates stacking of UM coverage *for every vehicle* covered under a policy, regardless of the number or amount of the premium(s) paid for UM coverage[,]"[1] the court's application of that policy in subsequent decisions has not been at all consistent. An exhaustive analysis of Mississippi precedent would serve no purpose other than to confuse the issue. What this court must do is identify current Mississippi law on the issue of stacking and determine how it affects which, if any, coverages Nettles is entitled to stack.

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the *moving party is entitled to judgment as a matter of law.*" Whether a material question of fact exists is itself a question of law that the district court must consider before granting summary judgment. *John v. State of La.,* 757 F.2d 698, 712 (5th Cir.1985).

Although Rule 56 does permit summary disposition of legal questions, it is not limited to that role. That a disputed factual issue exists "does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Profes-*

*sional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986). Material facts are those that "might affect the outcome of the lawsuit under the governing substantive law", and only disputes over such outcome-determinative facts will preclude summary judgment. *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir.1987). Where the evidence offered in support of summary judgment establishes that "one of the essential elements of the plaintiffs' cause of action does not exist as a matter of law, ... all other contested issues of fact are rendered immaterial." *Topalian v. Ehrman,* 954 F.2d 1125, 1138 (5th Cir.1992).

To prevail on his motion, the moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. *Union Planters Nat'l Leasing v. Woods,* 687 F.2d 117, 119 (5th Cir.1982). "The movant accomplishes this by informing the court of the basis of its motion and by identifying portions of the record which highlight the absence of genuine factual issues." *Topalian,* 954 F.2d at 1131.

A judge's function at the summary judgment stage is not to weigh the evidence or decide factual issues but to determine whether there is indeed a genuine issue for trial. *McPherson v. Rankin,* 736 F.2d 175, 178 (5th Cir.1984). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 211–12 (1986). If the evidence is "merely colorable or is not significantly probative," summary judgment is appropriate. *Id.* at 477 U.S. at 249–50, 106 S.Ct. at 2511, 91 L.Ed.2d at 212.

---

**1.** *United States Fidelity & Guar. Co. v. Ferguson,* 698 So.2d 77, 79(¶ 8) (Miss.1997) (emphasis added).

Once a properly supported motion for summary judgment is presented, "the non-moving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Litig.,* 672 F.2d 436, 440 (5th Cir.1982). Although in making its determination of whether a triable issue of fact exists the court must view the evidence submitted by the parties in a light most favorable to the non-movant, *McPherson,* 736 F.2d at 178, the non-movant may not rely on mere denial of material facts, or unsworn allegations in the pleadings, or arguments and assertions in briefs or legal memoranda but must, by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. FED. R.CIV.P. 56(e); *see also Union Planters Nat'l Leasing v. Woods,* 687 F.2d at 119. If he cannot, there is no issue of fact warranting a trial on the merits, and the movant is entitled to judgment as a matter of law.

## MISSISSIPPI LAW ON THE ISSUE OF STACKING

The facts to which this court must apply existing law have been stipulated by the parties, so the question that must be answered by this court is whether the facts of this case and Mississippi precedent require that the vehicle of the tortfeasor, Lonnie Parden, be deemed underinsured irrespective of the fact that he has liability limits of one million dollars. As previously stated, the ruling in the case at bar was stayed pending appeal of the decision in *Mascarella v. United States Fidelity and Guar. Co.,* 71 F.Supp.2d 598 (S.D.Miss. 1999). During this interim, the Mississippi Supreme Court handed down *McDaniel v.* *Shaklee U.S., Inc.,* 807 So.2d 393 (Miss. 2001).

*Shaklee* involved a fleet policy that covered 1,758 vehicles owned by Shaklee with some, but not all, of them having uninsured/underinsured motorist coverage of $10,000.00 per person/$20,000.00 per accident.[2] At the time of the accident, McDaniel was operating a vehicle owned by Shaklee and loaned to McDaniel, an independent distributor, as a result of her qualifying as a "Sales Leader" under the "Bonus Car" program. Under the program McDaniel paid Shaklee $352.49 per month for the use of the car as well as $75.60 for comprehensive insurance, medical payments, and uninsured/underinsured motorist coverage of $10,000.00 per person/$20,000.00 per accident.[3] *Shaklee,* 807 So.2d at 395(¶ 4). On appeal of summary judgment in favor of Shaklee, the Mississippi Supreme Court recognized the confusion in this area of law when it stated:

This question [uninsured/underinsured motorist coverage] has been the topic of considerable litigation as of late and has been a thorn in the sides of many an attorney, client, and judge, including those on this bench, for years. There is no shortage of case law dealing with the matter. The difficulty stems from the apparent contradictions and ambiguities within the caselaw. Furthermore, even those cases that seem to establish a bright line rule are so fact specific that anytime one minor detail or fact changes, the case loses much of its instructiveness. Hopefully, by using the principles and guidelines set forth in earlier cases, we may now be able to establish some hard and fast rule as to

---

**2.** Not all vehicles carried UM coverage because, unlike Mississippi, some states do not require it.

**3.** The tortfeasor was insured by a policy that provided $25,000.00 in liability limits.

when stacking is permitted and when it is not.

*Shaklee*, 807 So.2d at 395–96 (¶ 7).

Shaklee argued that its fleet policy did not provide for stacking and specifically covered only the car that McDaniel was driving. Shaklee also took the position that the car was not part of a "fleet" because McDaniel paid monthly for her use of the car as well as paying for the insurance individually. *Shaklee*, 807 So.2d at 397 (¶ 12). The supreme court reversed the trial court's grant of summary judgment in favor of Shaklee finding that the automobile driven by McDaniel under the Bonus Car program was owned and operated by Shaklee and that it was covered under the fleet policy since Shaklee collected the individual premiums from the operators of the vehicles and paid one large uninsured motorist insurance premium. *Shaklee*, 807 So.2d at 397–98 (¶ 13).

Referring specifically to the definition of "insured" set out in Miss.Code Ann. § 83–11–103(b), the *Shaklee* Court also determined that because Shaklee consented to McDaniel's using the vehicle, McDaniel was an insured under the statutory definition for purposes of UM coverage. *Shaklee*, 807 So.2d at 398 (¶ 15).[4] It further found that while the policy specifically included "Sales Leader(s)" as named insureds, it also attempted to restrict the available coverage, thereby creating an ambiguity in the policy as to whether a "sales leader" was a named insured. Because " '[a]ny ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage,' " the court concluded that McDaniel fit the description of an insured for UM purposes under both policy and statutory definitions and therefore that all UM coverage afforded by the fleet policy could be stacked in order to qualify the tortfeasor as an underinsured motorist. *Shaklee*, 807 So.2d at 398 (¶ 15)(quoting *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss.1994)). As the stacked coverage to which McDaniel was entitled greatly outweighed the $25,000.00 liability limit of the tortfeasor, the tortfeasor qualified as an underinsured motorist as defined by Miss.Code Ann. § 83–11–103(c)(iii), thereby affording McDaniel the opportunity for full recovery of her damages against the stacked UM benefits. *Shaklee*, 807 So.2d at 399 (¶ 18) (reversing summary judgment in favor of Shaklee).

Nearly a year later the Mississippi Supreme Court responded in *Mascarella v. United States Fidelity and Guar. Co.*, 833 So.2d 575 (Miss.2002) (hereinafter "*Mascarella II*") to a question certified to it by the Fifth Circuit Court of Appeals.[5] That question was "whether an injured insured is entitled to stack the underinsured motorist coverage of other vehicles covered under his fleet policy thereby making the third-party tortfeasor's vehicle an underinsured motor vehicle." *Mascarella II*, 833 So.2d at 576(¶ 1).

In *Mascarella* the suit against USF & G arose from Kade Mascarella's having been

---

4. In *Wickline v. United States Fidelity and Guar. Co.*, 530 So.2d 708 (Miss.1988), to resolve the stacking issue the court first considered the question of whether Stacy Wickline—the "injured person"—was an "insured" within the contemplation of uninsured motorist law. Looking to Miss.Code Ann. § 83–11–103(b), the court emphasized that "the question is purely and simply one of reading the statute as written" and that "[t]he judicial eye reads only the positive command of the statute." The positive command definitive of Stacy Wickline's status as an "insured" was found in relevant part in 83–11–103(b)'s definition of "insured" as "a guest in such motor vehicle to which the policy applies." *Id.* at 714.

5. The question arose from appeal of the grant of summary judgment to the insurer in *Mascarella v. United States Fidelity and Guar. Co.*, 71 F.Supp.2d 598 (S.D.Miss.1999).

injured in a two-vehicle accident that occurred while he was driving a vehicle that belonged to his employer. The vehicle was one of eight vehicles insured under a fleet policy which provided UM coverage of $25,000.00 per accident per vehicle. The tortfeasor, Sutherland, was insured by a policy with liability limits of $100,000.00 per person. Although Mascarella was not a named insured under the fleet policy, he argued that he should be entitled to stack all eight vehicles for a total of $200,000.00. If he were, the $200,000.00 compared with the tortfeasor's $100,000.00 would render the tortfeasor's vehicle underinsured, potentially entitling Mascarella to an additional $100,000.00 in UM coverage.

Addressing the "stacking" issue, the Mississippi Supreme Court looked to the "threshold question" of whether the tortfeasor's insured vehicle qualified as underinsured. *Mascarella II*, 833 So.2d at 576(¶ 5). Ignoring class distinctions made by previous courts,[6] the *Mascarella II* Court went straight to the definition of "uninsured motor vehicle" as set out in MISS.CODE ANN. § 83–11–103(c)(iii):

> An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage.

*Mascarella*, 833 So.2d at 577(¶ 6). The court then traced the development of stacking jurisprudence in Mississippi, making specific reference to *Wickline v. Unit-*

ed States Fidelity and Guar. Co.[7] and *Thiac v. State Farm Mut. Auto. Ins. Co.*[8] and reiterating the "established" rule of law relative to the statutory definition of an uninsured motorist: " '[F]or the purpose of qualifying the host vehicle as underinsured, a guest passenger is permitted to stack her own UM coverage with the UM coverage on the host vehicle.' " *Mascarella II*, 833 So.2d at 578(¶ 9) (quoting *Thiac*, 569 So.2d at 1219–20 [9]).

Referring to the rule announced *Southern Farm Bureau Casualty Ins. Co. v. Roberts*[10] and applied in *Wickline*, the *Mascarella II* Court reached the same result reached in those two cases: "[O]nly the UM coverage of **the** vehicle in the accident which injures the insured can be included when stacking all the UM coverages applicable to an injured insured." *Mascarella II*, 833 So.2d at 578(¶ 9) (emphasis added).

To arrive at its conclusion that Sutherland's vehicle was not underinsured, the court had only to apply the rules of law established by *Wickline* and *Thiac* to the facts presented to it. Mascarella had no UM coverage of his own. Development Concepts—not Mascarella—owned the fleet of vehicles. Development Concepts—not Mascarella—insured the fleet of vehicles. Sutherland's vehicle had $100,000.00 in liability coverage. The vehicle that Mascarella was driving at the time of the accident had only $25,000.00 in UM coverage. Accordingly, the *Mascarella II* Court answered both the threshold question and the certified question in the nega-

---

**6.** The *Shaklee* Court paid little attention to the classification issue stating that "there is no basis for insured classification whatsoever." *Shaklee*, 807 So.2d at 398 (¶ 15). Referring to Miss.Code Ann. § 83–11–103(b), the *Mascarella II* Court likewise identified the "only requirement" as being that "the injured party" is an "insured". 833 So.2d at 577.

**7.** 530 So.2d 708 (Miss.1988).

**8.** 569 So.2d 1217 (Miss.1990).

**9.** *Thiac*, relying on the rule announced in *Wickline*, placed emphasis on limiting the UM coverage applicable to the insured to the UM coverage of the "host" vehicle.

**10.** 323 So.2d 536 (Miss.1975).

tive. *Mascarella II,* 833 So.2d at 579–80 (¶ 12).[11]

For the same reasons and on much the same facts, save one,[12] this Court must likewise answer the question before it—whether the vehicle of tortfeasor Lonnie Parden may be deemed underinsured—in the negative. Nettles, who is not listed as a named insured on the fleet policy, may not stack the UM coverages on all 138 of the vehicles owned by his employer and insured by his employer under that policy in order to determine that Lonnie Parden's vehicle is underinsured. That Nettles may stack the three UM coverages available to him under his own State Farm policies with the UM coverage on the Lumina involved in the accident[13] does not lead to a different result. The total UM coverage available to Nettles—$100,000—falls far short of the million dollar liability coverage on the Parden vehicle. Consequently, Nettles does not have a UM/UIM claim against either Travelers or State Farm under applicable Mississippi law.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Travelers Property Casualty Insurance Company's Motion for Summary Judgment is GRANTED, and Plaintiff's Complaint against this defendant is DISMISSED.

IT IS FURTHER ORDERED AND ADJUDGED that State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment is GRANTED, and

Plaintiff's Complaint against this defendant is DISMISSED.

A separate judgment in accord with Federal Rule of Civil Procedure 58 will be entered herein.

---

11. On facts identical to those of *Mascarella,* the same result was recently reached by the Mississippi Court of Appeals in *Greer v. Liberty Mut. Ins. Co.,* No.2003–CA–02702–COA (Miss.App. Feb.1, 2005).

12. Unlike Mascarella, Nettles did have three policies of his own covering three personal vehicles. Each policy provided $25,000.00 UM/UIM coverage per person.

13. In relevant part MISS.CODE ANN. § 83–11–103(b) defines "insured" to mean "any person

who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies". (Emphasis added). In accord with *Wickline,* this court's "judicial eye" must read only "the positive command" of section 83–11–103(b) and recognize that although Nettles is a statutory insured, he is only an insured within the contemplation of uninsured motorist law as to the motor vehicle (the Lumina) that he was using with his employer's consent.